STATE OF NEBRASKA, EX REL. L. P. MAIN, v. LORENZO CROUNSE, GOVERNOR.

FILED MAY 1, 1893.    No. 6067.

</div>

**Statutes:** ENACTMENT: APPROVAL OF GOVERNOR. The governor is a part of the law-making power of the state, and every bill, before it becomes a law, even if passed by a two-thirds majority of each house, must be approved by him, passed over his veto, or remain in his hands more than five days, Sundays excepted.

ORIGINAL application for *mandamus.*

*L. P. Main* and *R. A. Moore,* for relator.

*George H. Hastings, contra.*

MAXWELL, CH. J.

This is an action to compel the governor to appoint an additional judge in the twelfth district, notwithstanding his veto of the bill providing for such additional judge, and failure of the legislature to pass the bill over the veto. It is alleged in the petition that "The relator, L. P. Main

represents to the court that he is a citizen of the United States and of the state of Nebraska, and a resident of Buffalo county in said state; that the defendant, Lorenzo Crounse, is the governor of the said state of Nebraska, duly elected and qualified; that the twelfth judicial district in said state comprises the counties of Buffalo, Custer, Dawson, and Sherman; that on or about the 1st day of March, 1893, a bill dividing the said state of Nebraska into judicial districts and providing for the appointment of an additional judge in said twelfth district was pending in the lower house of the state legislature of Nebraska, which was then in regular session, and on or about the date aforesaid was passed by said house; that thereafter and about the 8th day of March, 1893, said bill was passed by the senate of the state of Nebraska; that upon the passage of said bill in each house of the state legislature the yeas and nays were entered on the journal and said bill received the affirmative vote of more than two-thirds of the members elected to each house as required by the constitution of said state; that said bill contained a provision whereby it became effective immediately upon its passage by said state legislature, and also contained a provision requiring the governor of said state to appoint said additional judge immediately after the passage of said act; that the defendant has failed, neglected, and refused, and does still refuse, to appoint said additional judge in said twelfth judicial district, though often requested so to do; that relator has requested George H. Hastings, attorney general of said state, to bring this action or allow it to be brought in his name and he has refused so to do. Wherefore relator prays for a writ of *mandamus* requiring said defendant, as governor of the state of Nebraska, to appoint some legally qualified person to serve as judge in said twelfth judicial district."

To this petition the governor filed an answer as follows:

"Comes now Lorenzo Crounse and answering the petition for *mandamus* filed in the above entitled cause, says:

" 1. He admits the relator, L. P. Main, is a citizen of the United States, of the state of Nebraska, and a resident of Buffalo county.

" 2. That Lorenzo Crounse is the duly elected, qualified, and acting governor of the state of Nebraska.

" 3. That the twelfth judicial district in the state of Nebraska comprises the counties of Buffalo, Custer, Dawson, and Sherman. That on or about January 21, 1893, a bill known as house roll No. 172, for an act to amend section 226 of chapter 3 of the Consolidated Statutes of Nebraska, by providing for an additional judge in the twelfth judicial district of said state, was duly introduced in the lower house of the twenty-third legislative assembly of Nebraska, which twenty-third legislative assembly was then in regular session; that on February 28, 1893, said bill entitled house roll No. 172 passed the lower house of the said twenty-third legislative assembly of Nebraska; that thereafter and on or about March 9, 1893, the said bill known as house roll No. 172 passed the upper house or the senate of the twenty-third legislative assembly; that said bill was duly presented to the governor of the state of Nebraska on or about the 10th day of March, 1893, and that after careful consideration, this respondent, as the said governor of the said state, did, for good and sufficient reasons, veto said bill, known as house roll No. 172, and that on said 13th day of March, 1893, said bill known as house roll No. 172, together with the veto message containing the objections of this respondent to the said bill, was duly returned to the lower house of the twenty-third legislative assembly of said state; that thereupon and in the manner provided by law the said bill known as house roll No. 172 was duly considered by said lower house of the twenty-third legislative assembly of Nebraska and the said veto of the said governor was by said body sustained; and thereupon and for said reasons said bill failed to become a law, and failed to pass the legislature, in the manner and as provided by the

constitution and laws of the state of Nebraska, and that it is true that this respondent has failed and refused to appoint an additional judge in the twelfth judicial district of the state of Nebraska, for the reason that there is no vacancy in said office, and no law authorizing or empowering this respondent to make such an appointment, and this respondent denies that he has any right or authority whatever for making such an appointment."

The relator demurred to the answer on the ground that the facts stated therein did not constitute a defense to the action.

Section 15, article 5, of the constitution provides: "Every bill passed by the legislature, before it becomes a law, and every order, resolution, or vote to which the concurrence of both houses may be necessary (except on questions of adjournment) shall be presented to the governor. If he approve, he shall sign it, and thereupon it shall become a law; but if he do not approve, he shall return it, with his objections, to the house in which it shall have originated, which house shall enter the objections at large upon its journal, and proceed to reconsider the bill. If then three-fifths of the members elected agree to pass the same, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered; and if approved by three-fifths of the members elected to that house it shall become a law, notwithstanding the objections of the governor. In all such cases the vote of each house shall be determined by yeas and nays, to be entered upon the journal."

Section 11, article 6, provides: "The legislature, whenever two-thirds of the members elected to each house shall concur therein, may, in or after the year one thousand eight hundred and eighty, and not oftener than once in every four years, increase the number of judges of the district courts, and the judicial districts of the state. Such districts shall be formed of compact territory, and bounded by county lines; and such increase, or any change in the

boundaries of a district, shall not vacate the office of any judge."

The relator's position is that the language of the section providing that the legislature may do that which in this case they have sought to do wheneyer two-thirds of the members elected to each house concur therein, is inconsistent with the provision requiring the executive approval of all laws, and that therefore a law of this kind can become operative upon its passage by both houses by a two-thirds majority. It is contended by him that not only would this seem to be in accordance with the constitution, but it is supported by reason, and whenever a reason for a rule ceases the rule also ceases, and certainly there can be no reason for submitting to the governor for his approval an act which to secure its original passage requires a larger number of votes than are required to pass any bill over the executive veto, and that there is authority for this position.

In *Hall v. City of Racine*, 50 N. W. Rep., 1094, the supreme court of Wisconsin discussed this question. The case arose over a municipal ordinance, which, from its peculiar nature, required a three-fourths vote of all the members elected to the council, and the court held that inasmuch as two-thirds of the members elected to the council were sufficient to pass the ordinance over the veto of the mayor, the ordinance having necessarily received a larger number of votes than were necessary to pass it over the veto of the mayor, became operative without submission to the mayor, and in discussing the question the court held that a similar provision in the state constitution will be similarly construed, saying the approved rules, both of statutory and constitutional construction, require that the special provision should be given full force whenever it is inconsistent with the general provision, and that the law would not require a useless thing, namely, the submission of a bill of this kind to the governor of a state or the

mayor of a city.   We have great respect for the decisions
of the supreme court of Wisconsin, and find frequent oc-
casion to quote from and approve the same, but in the case
cited it seems to us that the court overlooked an important
fact, viz., that the officer whose approval is necessary in
the first instance, and who has authority to veto any meas-
ure which it is proposed to enact into a general or local
law is a part of the law-making power.   To him as well
as the deliberative body passing the law is confided the
duty of scrutinizing its details and considering the effect it
may have.   Particularly is this true as applied to the gov-
ernor of a state.   To him as well as to the legislature is
confided the business of making laws.   He is elected by
the electors of the entire state and is presumed to have
been chosen because of his fitness for the position.   He
represents the people of the state at large, and not par-
ticularly those of any locality.   He is in a position there-
fore to judge impartially as to the necessity or expediency
of creating additional judges of the district court.   While
it is true that the bill providing for such judges must be
approved by two-thirds of the members elected to each
house, while three-fifths may pass the bill over the gover-
nor's veto, yet, when the governor returns a bill to the leg-
islature without his approval, he is required to state his
reasons for not approving the same.   These reasons are
presumably valid and may, and probably will, have the ef-
fect, as in this case, to convince a sufficient number of mem-
bers who may have voted for it at first to refuse to vote for
it against the governor's objections.   In which case it
would fail to become a law.   An act which is demanded
by the public will no doubt receive the necessary votes,
while if not so required it is best that it should fail.   The
signature of the governor was necessary, therefore, to the
bill in question, or that it should pass over his objections.
The bill, therefore, did not become a law, and the writ must
be denied.

It is alleged that there is a very large amount of business in the twelfth district and that another judge is necessary therein to dispose of the same.    The governor in his veto message, returning the bill without his signature, calls attention to the fact that there are more judges in some of the districts than the business demands, and that the law authorizes judges of one district to hold court in another district.    He also calls attention to the late case of *Tippey v. State*, 35 Neb., 368, in which it was held that different judges could hold court in the several counties of a judicial district at the same time.    Our constitution and statutes place but few restrictions upon this right.    There are four counties in the twelfth district. The judge of that district, therefore, may call to his aid three other judges from districts where the business is disposed of, and it is perhaps probable that the governor has power to require them to perform such duties.    No doubt a request would be all that would be necessary.

WRIT DENIED.

THE other judges concur.