197 So. 741

## STATE v. J. BODENGER REALTY CO., Limited (SUBURBAN BUILDING & LOAN ASS'N, Intervenor).

### No. 35044.

### July 18, 1940.

Charles J. Rivet, of New Orleans (James O'Connor, of New Orleans, of counsel), for appellant.

Gauche, Zengel & Wegener, of New Orleans, for appellee Suburban Building & Loan Ass'n.

PONDER, Justice.

This is an appeal from a judgment declaring Act No. 8 of 1932 to be unconstitutional insofar as it seeks to make the corporation franchise tax prime a pre-existing lien and mortgage.

It appears from the agreed statement of facts in the record that the Suburban Building and Loan Association, now the Union Savings and Loan Association, sold to the J. Bodenger Realty Co., Ltd., nine tracts, or parcels, of land situated in the City of New Orleans on June 12, 1929, for the consideration of $10,000 represented by a promissory note. The Association retained a vendor's lien on the property and J. Bodenger Realty Co., Ltd., granted a first mortgage on it, which contained the pact de non alienando, a confession of judgment on the note, and authorization to sell the property by executory process upon the failure of the maker to pay promptly. Subsequent to this sale, Act No. 8 of 1932 of the General Assembly of Louisiana was adopted, imposing a franchise tax on corporations doing business within the State, which provided that the State should have a first lien on the property of the corporation for unpaid taxes. On May 10, 1935, the State of Louisiana obtained a judgment against the J. Bodenger Realty Co., Ltd., for the sum of $1,179.59, with interest, penalties, and costs for franchise taxes due for the years 1933 and 1934. The judgment was duly recorded in the mortgage office of Orleans Parish. Subsequent thereto, on July 13, 1937, the Suburban Building and Loan Association foreclosed on the mortgage and the property was offered for sale at public auction. On September 9, 1937, the property was adjudicated to the Association for the sum of $3,000. After deducting from the price of the adjudication all the costs and real estate taxes assessed against the property, the balance was insufficient to satisfy the State's judgment for the franchise taxes and the Association's writ of seizure and sale in the foreclosure proceedings. The Association filed a rule in the present proceedings to rank the respective privileges. Upon trial thereof, the lower court gave judgment in favor of the Association declaring Act No. 8 of 1932 of the General Assembly of Louisiana unconstitutional insofar as it sought to make the lien for the franchise taxes superior to the Association's mortgage and vendor's lien and ordered the Association's writ of seizure and sale be satisfied before the State would be entitled to any of the proceeds for the payment of its judgment for the payment of the franchise taxes. From this judgment the State has appealed.

The intervenor contends that its vendor's lien and mortgage was created by authority of Section 9, Act No. 120 of 1902, as amended by Act No. 280 of 1916, the pertinent part of which reads as follows:

"Such vendor's privilege and mortgage, shall have priority over all other liens, charges, privileges, incumbrances, and mortgages upon the property and the building and improvements thereon, which shall be recorded or claimed subsequent to the recording of such vendor's privilege and mortgage, or which may arise in any manner whatsoever subsequent to the date of recordation.

Counsel takes the position that the Legislature did not declare clearly and unambiguously, in Act No. 120 of 1902, as amended, the State's lien for unpaid corporation franchise taxes shall prime a pre-existing vendor's lien and mortgage

and for that reason, the statute is susceptible of two interpretations and the one less onerous to the taxpayer must prevail. Counsel cites authorities to the end that statutes must be construed liberally in favor of the taxpayer and that when a statute is susceptible of two interpretations the one most favorable to the taxpayer must prevail.

 In a very recent case we held that the State's lien for unpaid corporation franchise taxes is superior in rank to a pre-existing vendor's lien and mortgage. Hibernia Mortgage Company v. Greco, 191 La. 658, 186 So. 60. An examination of Act No. 120 of 1902, as amended, reveals that it provides for the organization of homestead associations, etc., and defines the rights, powers and privileges of such corporations, etc. We find no language used in the Act referring to the taxing power of the State or liens granted for unpaid taxes. If the Legislature had intended to give the lien provided for a superiority over a subsequent State's lien for unpaid taxes there would have been some language used to indicate such intent. It is apparent that the statute only contemplated transactions between individuals or private corporations. A large percent of the business of a homestead association involves the sale and resale of property. The party desiring a loan transfers his property to the homestead associations and the homestead association retransfers the property to this same party reserving a vendor's lien and mortgage. From the very nature of the transaction title to the property was never intended to be parted with and in the absence of any special statute it is doubtful whether a homestead association under such circumstances would acquire more than a mere mortgage. Such being the case, it is our opinion that the provision in the statute granting a vendor's lien and privilege was placed therein for the benefit of the homestead associations to grant them a vendor's lien of a like nature to that retained when title to the property was actually parted with. The language used in Section 9 of the Act, as amended, is very broad but there is nothing to indicate that the Legislature contemplated the taxing power of the State or the liens granted for unpaid taxes. If it had been the intention of the Legislature that this Act should affect subsequent liens granted the State for unpaid taxes some language would have been used to indicate such intent.

 Counsel suggests that this case might be differentiated from the Greco case by calling our attention to the fact that the Greco case involved a proceeding by ordinary suit to enforce the lien while in the instant case the proceeding is quasi in rem or by executory process. In our per curiam in the Greco case we withheld passing on this issue at the instance of various homestead associations, etc., who had filed a brief as amici curiae, for the reason that this question was not at issue therein. Counsel has cited no authorities in support of this suggestion and we know of no valid reason why the intervenor herein would gain an additional advantage with respect to the rank of his lien by a proceeding in rem. The rank of the lien is

not dependent on the method of its enforcement.

Counsel contends that, assuming the State's version of the legislative intent to be correct, it would impair the obligations of the intervenor's charter and contract of security in violation of the contract clauses of the Federal and State Constitutions. Const.U.S. art. 1, § 10; Const.La.1921, art. 4, § 15.

■ The question presented was determined in the Greco case. Counsel attempts to draw a distinction between the power to tax and the power to make the tax effective as a lien on property. On the basis of this distinction counsel contends that the tax statute is unconstitutional in so far as it attempts to give the State a lien of a superior rank over that arising from conventional obligations before the origin of the tax. Counsel also advances the argument that the statute is unconstitutional because it introduces a change in the terms of its contract and the remedy of its enforcement. To accept these arguments we would have to recognize that there was a distinction between the power to tax and the power to create a lien to secure the payment of the tax and consider the statute as impairing the defendant's contract by changing its terms and the remedy for its enforcement. The arguments advanced are answered in the Greco case. We held in that case that a statute which levies a tax which affects only incidentally the obligations of private contracts, previously entered into, does not violate the contract clauses of the Constitutions for the reason that such contracts are made with reference to the taxing power inherent in the State and are made in subordination to that power. We pointed out therein that the only cases to the contrary are where the statute levies a tax and creates a lien to secure the payment thereof which would have the effect of repudiating or impairing the obligation of a contract entered into by the State herself, or by one of her municipalities, political corporations or agencies.

For the reasons assigned, the judgment appealed from is reversed and set aside and the intervention is dismissed at intervenor's cost.