CLYDE L. LICKING, APPELLEE, V. HAYS LUMBER COMPANY, APPELLEES, STATE OF NEBRASKA, APPELLANT.

19 N. W. 2d 148

FILED JUNE 8, 1945. No. 31938.

*Walter R. Johnson,* Attorney General and *Robert A. Nelson,* for appellant.

*Johnson & Johnson,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

This action was commenced in the district court for Thomas county by Clyde L. Licking, as plaintiff. The purpose of the action is to quiet plaintiff's title in and to certain lands located therein. Among the defendants was the state of Nebraska, which has appealed from a general finding in favor of the plaintiff.

For the purpose of this opinion the appellant will be referred to as the state and appellee as the plaintiff.

Since the provisions of the Compiled Statutes of 1929 are applicable to the facts of this case they will be referred to rather than the Revised Statutes of 1943, except when it is necessary to refer to subsequent amendments.

The Hays Lumber Company, a corporation organized for profit, was incorporated under the laws of this state on January 15, 1916. On February 16, 1925, it became the owner of the lands here involved. General taxes for the state and its political subdivisions were assessed against these lands for the years of 1925 and 1926. They remained unpaid and were sold to J. B. Gibson on November 7, 1927. He was issued a tax sale certificate. This certificate he assigned to D. P. Wetzel. The holder of this certificate paid the 1927 and 1928 taxes assessed against these premises after the same became delinquent.

In each of the years of 1926 and 1927, pursuant to the provisions of section 24-1703, Comp. St. 1929, the Secretary of State assessed against the Hays Lumber Company, a corporation, an occupation fee of $70 based on its paid-up capital stock. On August 1 of each of said years there was, pursuant to the provisions of section 24-1713, Comp. St. 1929, added thereto, because of the corporation's failure to pay such occupation fee, the sum of 15 per cent or $10.50, making a total for each of said years in the sum of $80.50. Pursuant to the provisions of section 24-1722, Comp. St. 1929, the Secretary of State did, on December 23, 1927, send by registered letter to the company at its last named address a notice of the occupation tax which was due and advised that if the delinquent occupation tax was not paid within 90 days the corporation would be dissolved. The corporation failed to pay the occupation fee and accordingly on March 23, 1928, the Secretary of State dissolved the corporation.

On September 9, 1932, D. P. Wetzel commenced a foreclosure of these lands on the basis of the tax sale certificate which has heretofore been referred to. In this action he did not make the state of Nebraska a party. Pursuant to decree entered on March 13, 1933, a sale was had on January 20, 1934, and the property sold to D. P. Wetzel. This sale was confirmed on March 12, 1934, and a sheriff's deed executed to the purchaser on August 17, 1935.

The property was on September 5, 1935, conveyed by the

purchaser to Margaret L. Corkin and she conveyed it to the plaintiff on November 8, 1943.

In 1943 the legislature, by Legislative Bill 368 which appears as chapter 54, Laws 1943, at page 217, amended section 24-1722, Comp. St. 1929. This law is now section 21-323, R. S. 1943, and the amendment is as follows: *"Provided,* however, occupation taxes existing and delinquent on August 28, 1943, shall cease to be a lien as against any mortgagee, pledgee, purchaser or judgment creditor unless a notice of the lien is filed by the Secretary of State, within one year after the taking effect of this act, with the county clerk of the county wherein the personal property sought to be charged with such lien is situated, and with the county clerk or register of deeds of the county wherein the real estate sought to be charged with such lien is situated." Pursuant thereto the Secretary of State filed its notice of lien in the office of the county clerk of Thomas county on May 29, 1944.

Was the occupation fee assessed against the Hays Lumber Company by the Secretary of State a lien on the lands in question of which a purchaser had notice?

Section 24-1712, Comp. St. 1929, provided in part as follows: "The fees, taxes and penalties required to be paid by this article, shall be the first and best lien on all property of the corporation, * * * ."

Section 24-1722, Comp. St. 1929, provided in part as follows: "Upon the failure of any domestic corporation to pay its occupation tax within ninety days after the mailing of the registered letter correctly addressed to the last known address of the corporation, all delinquent occupation taxes of the corporation shall be a lien upon the assets of the corporation, subsequent only to state, county and municipal taxes."

To support the state's contention that these statutory provisions create a lien of which all parties had notice, it cites the case of *Nebraska Central Bldg. & Loan Ass'n v. Yellowstone, Inc.,* 140 Neb. 422, 299 N. W. 474, also reported on rehearing in 141 Neb. 679, 4 N. W. 2d 762. It is true

that the opinion holds the occupation fee to be a lien but that question was never raised by the parties. It was agreed that whatever years were owing constituted a lien. It can hardly be said, from an examination of these two opinions, that we have passed on the question here presented.

"A tax imposed as an annual charge upon the right to continued corporate existence is not a property tax but is an excise, although computed on the basis of the amount of capital stock." 2 Cooley, Taxation (4th ed.), sec. 840, p. 1706. "A tax graduated by the amount of the capital stock of a corporation, the paid-up or outstanding capital stock, the authorized capital stock, * * * is usually regarded as a franchise tax imposed on the privilege of existing as a corporation or the privilege of doing business as a corporation in the state, rather than as a property tax." 51 Am. Jur., sec. 811, p. 728. "An excise tax, using the term in its broad meaning as opposed to a property tax, includes taxes sometimes designated by statute or referred to as privilege taxes, license taxes, occupation taxes, and business taxes." 1 Cooley, Taxation (4th ed.), sec. 45, p. 129.

Our Constitution provides that such taxes may be authorized by law. Section 1, art. VIII of the Constitution of Nebraska provides in part: "The necessary revenue of the state and its governmental subdivisions shall be raised by taxation in such manner as the Legislature may direct; * * * . Taxes, other than property taxes, may be authorized by law."

"Tax liens, their duration, extent, and priority, are creatures of the local constitutions and statutes; * * * ." 51 Am. Jur., sec. 1010, p. 881. And as stated in 51 Am. Jur., sec. 1016, p. 887: "It is doubtless competent for the legislature not only to make taxes a lien upon all the property of the owner of the property taxed, but to make such liens a first lien upon the property of the taxpayer, giving them priority over a mortgage or any other lien existing against the property, whether created before or after the assessment of the tax; * * * ." "An excise tax may be made a lien on the property in connection with which the act, priv-

ilege, or occupation taxed is performed, enjoyed, or carried on, and such lien may be given priority over other liens existing against such property." 51 Am. Jur., sec. 1012, p. 883.

We find nothing in our Constitution or statutes that prohibits the legislature from making this statutory occupation fee a charge on the corporation's property, both real and personal. As stated in *Blackrock Copper Min. & Mill. Co. v. Tingey*, 34 Utah 369, 98 Pac. 180: "Nor is there any merit in the contention that both the tax and penalty constitute a lien upon the tangible property of the corporation. This is the method that the Legislature has adopted to enforce payment of the tax, and, * * * is a matter entirely within the legislative discretion."

As stated in *State v. J. Bodenger Realty Co.*, 195 La. 1014, 197 So. 741: "The state's lien under statute imposing a franchise tax on corporations doing business within the state, and providing that the state shall have a first lien on the property of the corporation for unpaid taxes, is superior in rank to a pre-existing vendor's lien and mortgage."

We have examined, in so far as possible, the decisions of all other state and federal jurisdictions on this question and find none to the contrary. For similar holdings see *Moran v. Leccony Smokeless Coal Co.*, 122 W. Va. 405, 10 S. E. 2d 578, 136 A. L. R. 1007; *New York Terminal Co. v. Gaus*, 204 N. Y. 512, 98 N. E. 11; *In re Century Steel Co. of America*, 17 F. 2d 78; *Seaboard Nat. Bank v. Rogers Milk Products Co.*, 21 F. 2d 414; *Engelhart v. Alvino Realty Co.*, 248 N. Y. 374, 162 N. E. 287; *Atlanta Trust Co. v. Atlanta Realty Corporation*, 177 Ga. 581, 170 S. E. 791; *Carey v. Keith, Inc.*, 250 N. Y. 216, 164 N. E. 912; *North River Coal & Wharf Co. v. McWilliams Bros.*, 32 F. 2d 355; *Smith v. Meader Pen Corporation*, 8 N. Y. S. 2d 39.

It is undoubtedly desirable that the legislature provide that notice of such tax be filed in some office of the county wherein such property is located, as was provided by the 1943 legislature in its amendment to section 24-1712, Comp. St. 1929, which section is now 21-312, R. S. 1943. This

amendment is as follows: "*Provided,* that the Secretary of State may, in his discretion, file notice of such lien in the office of the county clerk of the county wherein the personal property sought to be charged with such lien is situated, and with the county clerk or register of deeds of the county wherein the real estate sought to be charged with such lien is situated; and the lien provided for in this section shall be invalid as to any mortgagee or pledgee whose lien is filed, or as against any judgment lien which attached, or as against any purchaser whose rights accrued, prior to the filing of such notice."

However, we find no constitutional provision requiring it to do so. Prior to this amendment all that was necessary, in order to establish the lien, was for the state to assess the tax in the Secretary of State's office. All parties who, after the tax was assessed, dealt with the property of the corporation against which the tax was a lien must, for their protection, consult the records of the Secretary of State's office at Lincoln.

The case of *Commonwealth v. Central Realty Co.,* 338 Pa. St. 172, 12 Atl. 2d 312, was a case in which the reverse of this case existed. The legislature had repealed the provisions of the act requiring a notice of the lien to be filed in the county where the property was located. The court, in discussing this phase of the case, said: "That rule is that the necessity for filing the lien in the county where the taxable's real estate is located, which we held was essential to prevail under the Act of 1827, *supra,* against other lien creditors, became no longer necessary. It was thenceforth sufficient, in order to establish the lien, for the Commonwealth to settle the tax in the auditor-general's office in Harrisburg. The judgment creditor of or *bona fide* purchaser from the party against whom the taxes were assessed was thereafter required, for his own protection, to consult the auditor-general's records or indices in the State Capitol, * * * . The judgment indices in the county could not be exclusively relied upon. * * * 'As stated before, the Act of 1911 did away with the requirement of the Act of

1827 which compelled the Commonwealth to transmit a certified copy to the prothonotary of the county to be entered in his office and in lieu thereof it provided that the auditor-general should, upon the payment of a fee of twenty-five cents, give to any one interested a certificate showing the amount of all tax liens against any corporation. In other words, the manner and place of getting information as to State taxes was changed. This was a mere change of procedure and affected no rights. No one has any vested right in a particular remedy. If the records of a certain office are notice to every one as to matters therein appearing, the legislature may, in its wisdom, unless prevented by some constitutional restriction, at any time provide that thereafter such records shall be kept in some other office. Certainly no one would think that such an act changing the place where one must go for such information in regard to liens of a certain character deprived him of any right.' " See *Lewis & Wyalusing Light, Heat & Power Co.,* 62 Pa. Super. 282.

The state perfected a continuation of its lien within the time provided therefor by the 1943 legislature's amendment to section 24-1722, Comp. St. 1929, which now appears as section 21-323, R. S. 1943, by filing notice of its lien on May 29, 1944. Prior to this amendment it was not necessary to file a notice of lien in the county where the property of a corporation was located in order to establish a lien thereon for occupation fees assessed by the state. It was sufficient that it be assessed in the office of the Secretary of State.

The plaintiff's contention that the limitation imposed on a lien for occupation fees by the 1943 amendment to what is now section 21-312, R. S. 1943, applies to the state's lien here involved is not well taken. This limitation was not in force and effect at the time the state's lien became effective nor is the amendment retroactive. The 1943 legislature, by its amendment to what is now section 21-323, R. S. 1943, provided a method by which the state could keep alive whatever lien it had. This the state did by filing its notice within the time therein provided.

Nor do we see how the recording act, section 76-238, R. S. 1943, applies. It in no manner either refers or applies to taxes.

The record shows that the state was not made a party to the tax foreclosure action.

" 'A foreclosure sale of lands and tenements, unless the decree otherwise provides, transfers to the purchaser every right and interest in the property of all the parties to the action.' *Hart v. Beardsley,* 67 Neb. 145, 93 N. W. 423; *Arterburn v. Beard,* 86 Neb. 733, 126 N. W. 379. The same principle is announced in *Young v. Brand,* 15 Neb. 601, 19 N. W. 494; *Milligan v. Gallen,* 64 Neb. 561, 90 N. W. 541; *Criswell v. McKnight,* 120 Neb. 317, 232 N. W. 586, and in the annotation appearing in 73 A. L. R. 630, and *Bristol Lumber Co. v. Dery,* 114 Conn. 88, 157 Atl. 640." *Clements v. Doak,* 140 Neb. 265, 299 N. W. 505. " 'The purchaser of real estate at judicial sale under the foreclosure of a mortgage buys at his peril, * * * .' *Bannard v. Duncan,* 79 Neb. 189, 112 N. W. 353." *Clements v. Doak, supra.* The same rule applies to purchasers of property at tax sales. *Pennock v. Douglas County,* 39 Neb. 293, 58 N. W. 117; *Adams v. Osgood,* 42 Neb. 450, 60 N. W. 869; *Martin v. Kearney County,* 62 Neb. 538, 87 N. W. 351.

"The sale of real estate by a county treasurer for delinquent taxes due thereon for one year does not discharge either state, county, or city taxes assessed against such real estate for prior years, which taxes were not included in such sale." *Adams v. Osgood, supra.* See 135 A. L. R. 1468, note. "A sale of land for taxes due for one year does not discharge those levied and delinquent for previous years." *Medland v. Connell,* 57 Neb. 10, 77 N. W. 437.

The tax sale certificate which J. B. Gibson purchased and assigned to D. P. Wetzel did not include the state's lien for occupation tax nor did either party subsequently pay it. When D. P. Wetzel foreclosed these lands he only foreclosed for the general taxes for the years 1925, 1926, 1927 and 1928. He failed to make the state a party to the foreclosure proceeding. The state, at that time, had a lien on these

lands for the occupation fees and penalties assessed against the Hays Lumber Company who owned the property. These occupation fees have never been paid and continue to be a lien thereon. D. P. Wetzel, who purchased the property at the sale arising out of his foreclosure, purchased the property at his peril. He took the title subject to the unforeclosed lien of the state and its rights thereunder. His successors in title are in no better position.

We have therefore come to the conclusion that the decree quieting title was erroneous in so far as the state is concerned and should be modified so as to grant the state the relief prayed for.

It is therefore ordered that the decree be modified so as to allow the state a lien in the amount of its unpaid occupation fees together with costs. That if the amount be not paid within 30 days the premises, or so much thereof as is necessary, be sold to satisfy such lien. As modified the decree is affirmed.

AFFIRMED AS MODIFIED.