STATE OF NEBRASKA, APPELLEE, V. RICHARD GALYEN, APPELLANT.
378 N.W.2d 182

Filed December 13, 1985.   No. 85-332.

John M. Gerrard and Douglas J. Stratton of Domina & Gerrard, P.C., for appellant.

Robert M. Spire, Attorney General, and Bernard L. Packett, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

KRIVOSHA, C.J.

Although brought in the form of a criminal prosecution, this appeal concerns the constitutionality of Neb. Rev. Stat. §§ 54-2113 et seq. (Reissue 1984).

The appellant, Richard Galyen, was convicted of failing to pay a fee of 25 cents per head on cattle sold, as required by the provisions of §§ 54-2113 et seq. Galyen orally moved the Holt County Court, where the action was filed, to dismiss the complaint on the grounds that §§ 54-2113 et seq. violate both Neb. Const. art. VIII and U.S. Const. amend. XIV. The Holt County Court found the statute to be unconstitutional on both grounds and dismissed the complaint. The State appealed the decision of the Holt County Court to the district court for Holt County, where the decision was reversed and the action remanded for trial. Trial was held on February 27, 1985. The

facts of the case were stipulated to by the parties. On January 11, 1984, in Holt County, Nebraska, Galyen sold 495 head of cattle and refused to pay the fee required by §§ 54-2113 et seq. Following trial, Galyen was convicted of the charge. On appeal to the district court for Holt County, the conviction was affirmed.

Galyen's single assignment of error is that §§ 54-2113 et seq. violate Neb. Const. art. VIII, or, more specifically, Neb. Const. art. VIII, § 1, and U.S. Const. amend. XIV. By this opinion we decide only that limited issue. On the basis of our examination we determine that §§ 54-2113 et seq. do not violate Neb. Const. art. VIII, § 1, or U.S. Const. amend. XIV, and we, therefore, affirm the judgment of the district court.

Section 54-2113 provides as follows:

(1) There shall be paid to the [Nebraska Beef Industry Development Board] a fee of twenty-five cents per head upon all cattle sold in the State of Nebraska during the first year of operation of the program. After the first year of operation, the fee may be raised or lowered by the board after a public hearing in each of the six districts. The raise shall not exceed fifteen cents per head during any twelve-month period and the total fee shall not exceed fifty cents per head. The board may raise or lower the fee as it deems necessary to generate sufficient revenue to finance the programs created and administered to carry out the intent and general purpose of sections 54-2101 to 54-2119. Whenever a new fee is prescribed by the board, it shall remain in effect at least twelve calendar months.

(2) Cattle shall be subject to the fee each time they are sold.

(3) The fee shall be paid by the seller at the time of sale or delivery.

(4) For purposes of sections 54-2101 to 54-2119, when cattle are sold to an out-of-state buyer who transacts business in Nebraska, the sale shall be deemed to have occurred in Nebraska if the cattle sold were being raised, fed, or otherwise maintained within Nebraska immediately prior to sale.

Neb. Const. art. VIII, § 1, provides in part as follows:

The necessary revenue of the state and its governmental subdivisions shall be raised by taxation in such manner as the Legislature may direct. Taxes shall be levied by valuation uniformly and proportionately upon all tangible property and franchises . . . . Taxes, other than property taxes, may be authorized by law. . . . The Legislature may provide that livestock shall constitute a separate and distinct class of property for purposes of taxation and may further provide for reciprocal and proportionate taxation of livestock located in this state for only part of a year.

By reason of the manner in which Galyen attacks the statute, several specific questions must be addressed by us. Those questions are: (1) Is the fee of 25 cents per head a property tax or an excise tax? (2) If an excise tax, must it meet uniformity and proportionality requirements of Neb. Const. art. VIII, § 1? (3) Is the imposition of this fee on all cattle sold discriminatory against a particular class? For reasons which we shall detail hereinafter, we believe that the fee of 25 cents imposed on each head of cattle sold is an excise tax and not a property tax and, as such, need not be imposed uniformly and proportionately. Moreover, we believe that there is no discrimination against the class upon which the fee is imposed.

Black's Law Dictionary (5th ed. 1979) at 506 defines an excise tax as "A tax imposed on the performance of an act . . . . Tax laid on manufacture, sale, or consumption of commodities . . . ." On the other hand, Black's Law Dictionary, *supra* at 1097, defines a property tax as "A tax levied on both real and personal property; the amount of the tax being dependent on the value of the property, generally expressed as a uniform rate per thousand of valuation."

In *Licking v. Hays Lumber Co.*, 146 Neb. 240, 19 N.W.2d 148 (1945), we held that a tax imposed as an annual charge upon the right to continue corporate existence is not a property tax but is an excise tax, although computed on the basis of the amount of capital stock. In doing so we said at 243, 19 N.W.2d at 150: " 'An excise tax, using the term in its broad meaning as opposed to a property tax, includes taxes sometimes designated by statute or referred to as privilege taxes, license taxes,

occupation taxes, and business taxes.' " See, also, *State, ex rel. Smrha, v. General American Life Ins. Co.*, 132 Neb. 520, 272 N.W. 555 (1937).

On a number of occasions this court has similarly recognized that a tax imposed upon the doing of an act is an excise tax and not a property tax. In a series of cases beginning with *Burke v. Bass*, 123 Neb. 297, 242 N.W. 606 (1932), this court has held that fees similar to those imposed in the instant case are an excise tax and not a property tax. In *Burke, supra*, motor vehicle fuel sold and distributed in the State of Nebraska was subject to the payment of a tax of 4 cents per gallon on the sale of *all motor fuels* without regard to either the type, the selling price, or the value of the motor fuel. In upholding the statute we said at 298-99, 242 N.W. at 607:

> The tax is an excise tax upon the use and distribution of gasoline within the state. *Pantorium v. McLaughlin*, 116 Neb. 61. It is not an impost tax. It applies to all motor vehicle fuels used and distributed within the state. . . .
>
> . . . . The tax is in effect an excise tax imposed upon the sale and use of motor vehicle fuels within the state.

The instant tax is similar in all respects to the excise tax imposed in the *Burke* case, *supra*. See, also, *State v. Cheyenne County*, 127 Neb. 619, 256 N.W. 67 (1934); *State v. Smith*, 135 Neb. 423, 281 N.W. 851 (1938).

In the case of *Bowman v. Continental Oil Co.*, 256 U.S. 642, 41 S. Ct. 606, 65 L. Ed. 1139 (1921), the U.S. Supreme Court was asked to pass upon a tax imposed on the domestic sale of gasoline under a state constitution similar to our own. In upholding the validity of the act, the U.S. Supreme Court said at 649:

> The tax imposed by the act under consideration upon the "sale or use of all gasoline sold or used in this State" is not property taxation, but in effect, as in name, an excise tax. We see no reason to doubt the power of the State to select this commodity, as distinguished from others, in order to impose an excise tax upon its sale and use . . . .

Here, it seems clear that the tax is imposed on the privilege of selling cattle within this state without regard to the value of the property and, as an occupation or business tax, is an excise tax

and not a property tax.

Having determined that the tax thus imposed by § 54-2113 is an excise tax and not a property tax, we turn to the question of whether the tax must be assessed uniformly and proportionately under the provisions of Neb. Const. art. VIII, § 1. We have previously addressed this issue and have concluded that the requirements of article VIII, § 1, are not applicable to an excise tax. In *State v. Cheyenne County, supra* at 622, 256 N.W. at 69, we said: "The generally accepted rule of construction appears to be that state 'constitutional provisions relating to property taxes do not apply to excise taxes.' " The reason is because "[l]icense or excise taxes and property taxes are separate and distinct species of taxes, [and] are controlled and governed by rules and principles entirely different, and are essentially different, in both their character and their mission . . . ." 53 C.J.S. *Licenses* § 3 at 459 (1948).

In *Anderson v. Tiemann*, 182 Neb. 393, 155 N.W.2d 322 (1967), we held that a tax imposed upon the privilege of doing business and called a franchise tax was in fact an excise tax and not a property tax and, as such, was not required to be levied by valuation uniformly and proportionately. Such a view is totally consistent with the language of Neb. Const. art. VIII, § 1. To begin with, article VIII, § 1, provides that "[t]he necessary revenue of the state and its governmental subdivisions shall be raised by taxation *in such manner as the Legislature may direct.*" (Emphasis supplied.) By such direction the Legislature is not limited to imposing property taxes but may, in fact, impose taxes other than property taxes. Moreover, article VIII, § 1, further provides that "[t]axes, other than property taxes, may be authorized by law." These two provisions make it clear that all taxes need not be property taxes. A further reading of article VIII, § 1, makes it clear that only property taxes must be uniform and proportionate. The language of the Constitution reads: "Taxes shall be levied by valuation uniformly and proportionately upon all tangible property and franchises . . . ." If article VIII, § 1, consisted only of that sentence, one might argue that "taxes" refers to all taxes. But when it is read with the preceding sentence, which states that "[t]he necessary revenue of the state and its governmental subdivisions shall be raised by

taxation in such manner as the Legislature may direct," and which is followed by the language "[t]axes, other than property taxes, may be authorized by law," it becomes clear that the reference to "taxes" which must be levied uniformly and proportionately refers to taxes upon "all tangible property and franchises" as a property tax and not as an excise tax. See, also, *In re Estate of Sanford*, 90 Neb. 410, 133 N.W. 870 (1911), *modified and rev'd on other grounds* 91 Neb. 752, 137 N.W. 864 (1912); *State v. Vinsonhaler*, 74 Neb. 675, 105 N.W. 472 (1905); *Rocky Mountain Lines v. Cochran*, 140 Neb. 378, 299 N.W. 596 (1941). We therefore believe that as an excise tax its imposition need not be uniform and proportionate but, as here, may be upon each transaction.

That leaves us, then, with the final question as to whether the imposition of this fee on all cattle sold is discriminatory against a particular class. As we have indicated, we believe it is not.

To begin with, Neb. Const. art. VIII, § 1, itself authorizes treating livestock, including cattle, generally as a separate class without violating Neb. Const. art. III, § 18. The constitutional provision provides: "The Legislature may provide that livestock shall constitute a separate and distinct class of property for purposes of taxation . . . ." The next question that then arises is whether separating out cattle from other forms of livestock creates an unreasonable classification. In *Gossman v. State Employees Retirement System*, 177 Neb. 326, 335, 129 N.W.2d 97, 103 (1964), we said:

> The principles to be applied to testing legislative classification have been well established. The difficulty arises in their application to a particular set of facts or a particular legislative act. Classification is proper if the special class has some reasonable distinction from other subjects of a like general character, which distinction bears some reasonable relation to the legitimate objectives and purposes of the legislation. The Legislature may, and many times must, carve out classes or distinctions that would appear arbitrary or unreasonable. But, on closer examination, it is found that the classifications are related to and are necessary for the accomplishment of the legitimate purposes of the legislation. The question is

always whether the things or persons classified by the Act form by themselves a proper and legitimate class with reference to the purposes of the Act.

The legislative purpose of the Nebraska Beef Industry Development Act, Neb. Rev. Stat. §§ 54-2101 et seq. (Reissue 1984), is specifically set out by the Legislature: "The Legislature declares it to be in the public interest that individuals involved in beef production and marketing be permitted and encouraged to develop, carry out, and participate in programs of research, education, market development, and promotion." § 54-2103. In that regard we have previously held:

What is a public purpose is primarily for the Legislature to determine. A public purpose has for its objective the promotion of the public health, safety, morals, security, prosperity, contentment, and the general welfare of all the inhabitants. No hard and fast rule can be laid down for determining whether a proposed expenditure of public funds is valid as devoted to a public use or purpose. Each case must be decided with reference to the object sought to be accomplished and to the degree and manner in which that object affects the public welfare.

*State ex rel. Douglas v. Nebraska Mortgage Finance Fund*, 204 Neb. 445, 457-58, 283 N.W.2d 12, 21 (1979). See, also, *United Community Services v. The Omaha Nat. Bank*, 162 Neb. 786, 77 N.W.2d 576 (1956).

It appears to us that the promotion of the beef industry in this state is indeed a public purpose, and imposing an excise tax on all cattle sold in order to promote the industry is a reasonable and distinct classification and not one that is discriminatory.

Galyen further argues, however, that the classification is unreasonable in that the benefits of the act may inure to those outside of the beef industry who do not pay the tax. That argument has previously been made and rejected. In *Sandberg v. State*, 188 Neb. 335, 196 N.W.2d 501 (1972), this court considered the constitutionality of an increase in the cigarette tax. Revenues from the increased tax were allocated to the Beatrice State Home, the State Office Building Fund, and the University of Nebraska at Lincoln Field House Fund. In

rejecting an argument that one class of people was being required to pay for the benefit of another, we said at 340-41, 196 N.W.2d at 505:

> "If a tax levy, however, is for a public purpose, it is no objection to its validity that the benefits paid and the persons to whom they are paid are unrelated to the persons taxed. Nothing is more familiar in taxation than the imposition of tax upon a class or upon individuals who enjoy no direct benefit from its expenditure, and who are not responsible for the condition to be remedied by the tax. A tax designed to be expended for a public purpose does not cease to be one levied for that purpose because it has the effect of imposing a burden upon one class of business enterprises in such a way as to benefit another class."

If that argument had any validity at all, then persons without minor children, or corporations, could very easily argue that they cannot be required to pay for public education. Such a position has never been recognized in the law.

Galyen further argues that the imposition of the tax does not operate uniformly upon every member of the designated class because of the variances between cattle feeder operations and cow/calf operations. We may dispose of that argument by noting, first, that there is no evidence in the record to support that distinction and, further, that the assessment is levied upon the sale of each head of cattle. Therefore, the difference between full-grown cattle and calves appears immaterial.

Finally, Galyen argues that, as a practical matter, there is no effective method of policing the collection of the tax in certain situations, and therefore certain individuals may not pay the tax. This court has previously held that the inability of government to enforce an act to its fullest does not affect the constitutionality of the act. In *State, ex rel. Loseke, v. Fricke*, 126 Neb. 736, 742, 254 N.W. 409, 412 (1934), we said that the fact that an agency may have difficulty enforcing the act

> does not affect the validity of the act. It goes to the wisdom of the legislation. With that the court has no concern. Whether the legislature is wise or unwise; whether the enterprise may be profitable or unprofitable,

was a matter for the consideration of the legislature, and evidently the legislature deemed the legislation proper.

For these reasons we find that §§ 54-2113 et seq. do not violate Neb. Const. art. VIII, § 1, or U.S. Const. amend. XIV. The judgment of the district court affirming the judgment of the county court finding Galyen guilty as charged must be affirmed.

AFFIRMED.