REQUESTED BY: Senator Ray Aguilar Nebraska Legislature
You have requested our opinion concerning the validity of a proposed amendment to the Nebraska Nonprofit Corporation Act. The bill in question, LB 1246, would amend Neb. Rev. Stat. § 21-1927 (Cum. Supp. 2000) to allow nonprofit corporations organized to erect, own, lease, furnish, or manage a "civic, cultural, or convention area or facility for the use or benefit in whole or in part of any governmental body . . . or for the purpose of holding such property in trust for such body" the same exemption from property or sales and use taxes provided to the governmental body. You ask whether the proposed amendment is "in conflict with any Constitutional provisions or other state statutes regarding property built and used by or for a municipality or government entity?"[1]
[1] Since your request does not specify any particular statutory provisions with which the bill may conflict, we will generally limit our inquiry to the constitutional issues presented by the proposed legislation.
Prior to 1998, Article VIII, § 2, of the Nebraska Constitution exempted from taxation all property owned by the state and its governmental subdivisions, regardless of the use made of the property. See Platte Valley Public Power and Irrigation Dist. v. County of Lincoln, 144 Neb. 584, 14 N.W.2d 202 (1944); Report of Attorney General 1975-76 214 (Opinion No. 149) (December 15, 1975). In 1998, the voters approved an amendment to Article VIII, § 2 (LR45CA), which limited the property tax exemption for government property to property used for "public purposes." Article VIII, § 2, now provides, in pertinent part:
 (1) The property of the state and its governmental subdivisions shall constitute a separate class of property and shall be exempt from taxation to the extent such property is used by the state or governmental subdivision for public purposes authorized to the state or governmental subdivision by this Constitution or the Legislature. To the extent such property is not used for the authorized public purposes, the Legislature may classify such property, exempt such classes, and impose or authorize some or all of such property to be subject to property taxes or payments in lieu of property taxes except as provided by law;. . . .
To implement the changes to Article VIII, § 2, accomplished by the adoption of LR45CA, the Legislature in 1999 enacted LB 271. LB 271 amended several existing statutory provisions and added a number of new provisions in order to effectuate the constitutional mandate that certain property of the state and its governmental subdivisions be subject to tax. Section 77-202 was amended to provide, in part:
 (1) The following property shall be exempt from property taxes:
 (a) Property of the state and its governmental subdivisions to the extent used or being developed for use by the state or governmental subdivision for a public purpose. For purposes of this subdivision, public purpose means use of the property (i) to provide public services with or without cost to the recipient, including the general operation of government, public education, public safety, transportation, public works, civil and criminal justice, public health and welfare, developments by a public housing authority, parks, culture, recreation, community development, and cemetery purposes, or (ii) to carry out the duties and responsibilities conferred by law with or without consideration. Public purpose does not include leasing of property to a private party unless the lease of the property is at fair market value for a public purpose.
Section 1 of LB 271 eliminated language contained in § 21-1927
providing that certain nonprofit corporations (including those incorporated "for the purpose of providing for, erecting, owning, leasing, furnishing, and managing any building . . . for the use or benefit in whole or in part of any governmental, religious, social, educational, scientific, fraternal, or charitable society or societies, body or bodies . . . or for the purpose of holding property of any nature in trust for such society, body or institutions . . . ") were, "as to the ownership and taxation of their property," entitled to "all the rights, privileges, and exemptions of the body . . . for whose use or benefit or for whom in trust such property [was] held." The effect of the language previously contained in § 21-1927 was to allow nonprofit corporations incorporated for such purposes the same taxable status with respect to property ownership as the entity which they were organized to benefit. The amendment proposed under LB 1246 would add language to § 21-1927
similar to that removed by LB 271, but would limit the property tax exemption to nonprofit corporations which erect, own, lease, furnish, or manage a "civic, cultural, or convention area or facility for the use or benefit in whole or in part of any governmental body . . . or for the purpose of holding such property in trust for such body. . . ." LB 1246 would also add language granting such nonprofit corporations the same rights, privileges, and exemptions of the governmental body with respect to sales and use taxes.
 A. Property Tax Exemption
With regard to the property tax exemption proposed under LB 1246, the initial constitutional question which arises is whether granting such an exemption to nonprofit corporations engaged in providing, owning or furnishing a convention center or facility for the benefit and use of a governmental body involves a "public purpose" within the meaning of Article VIII, § 2, as amended. While the Constitutional provision does not define "public purpose," the Nebraska Supreme Court has noted "[a] public purpose has for its objective the promotion of the public health, safety, morals, security, prosperity, contentment, and the general welfare of all the inhabitants." State ex rel. Douglas v. Nebraska Mortgage Finance Fund, 204 Neb. 445, 458, 283 N.W.2d 12, 21
(1979). Courts from other jurisdictions have found that convention center facilities serve a "public purpose." See City of Shreveport v. Chanse Gas Corp., 794 So.2d 962 (La.Ct.App. 2001) (Economic development, in the form of convention center and hotel, constituted "public purpose" sufficient to justify exercise of power of expropriation.); State v. Osceola County, 752 So.2d 530, 539 (Fla. 2000) (Construction of convention center served public purpose sufficient to validate bond issuance because it "would, among other things, promote gainful employment, promote outside business interests and tourism, and provide a forum for educational, recreational, and entertainment activities."); State v. City of Miami,379 So.2d 651, 653 (Fla. 1980) (Approving issuance of bonds because convention center-garage "serve[d] a valid purpose purpose" by "provid[ing] a forum for educational, civic, and commercial activities and organizations.").[2]
While the Constitution does not define "public purpose" with regard to the exemption for property of the state and its government subdivisions, the Legislature, as noted, has done so by adopting LB 271 in 1999. "[P]ublic purpose" is defined to mean "use of the property (i) to provide public services with or without cost to the recipient, including the general operation of government, public education, public safety, transportation, public works, civil and criminal justice, public health and welfare, developments by a public housing authority, parks, culture, recreation, community development, and cemetery purposes. . . ." Neb. Reb. Stat. § 77-202(1)(a) (Cum. Supp. 2000). The ownership and operation of a civic, cultural, or convention center or facility reasonably can be said to fall within the category of providing for the "public health and welfare," as well as "culture," "recreation," and "community development." Convention centers and facilities provide a place for the public to access and engage in a variety of commercial, educational, and social activities, all of which constitute a "public purpose." Indeed, the public purpose served by convention centers or facilities is evidenced by the inclusion of such structures as qualified projects for community development purposes. Neb. Rev. Stat. §18-2103(12) (1997) ("[C]onvention and civic centers" within definition of "[r]edevelopment project for purpose of Community Development Law); Neb. Rev. Stat. § 18-2603(2) (Cum. Supp. 2000) ("[C]onvention and tourism facilities" included in definition of "infrastructure project" for purposes of the Municipal Infrastructure Redevelopment Act.). The Legislature has also deemed it appropriate to provide financial assistance programs to aid in the development of convention facilities or areas. Neb. Rev. Stat. §§ 13-2601 to 13-2612 (Cum. Supp. 2000) (Convention Center Facility Financing Assistance Act); Neb. Rev. Stat. §§ 13-2701 to 13-2710 (Local Civic, Cultural, and Convention Center Financing Act). Thus, we conclude the ownership and operation of a civic, cultural, or convention center or facility by a nonprofit corporation for the benefit of a governmental body constitutes a "public purpose."
Of potentially greater concern, however, is the fact that LB 1246 limits the exemption to nonprofit corporations owning or furnishing buildings in the nature of civic, cultural, or convention centers or facilities on behalf of governmental bodies. By singling out nonprofit corporations engaged in this specific activity for special treatment, the proposed legislation may establish an arbitrary or unreasonable classification in violation of Neb. Const. art. III, § 18.
 Art. III, § 18 of the Nebraska Constitution provides, as is pertinent: The Legislature shall not pass local or special laws in any of the following cases, that is to say:
* * *
 Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever . . . In all other cases where a general law can be made applicable, no special law shall be enacted.
A legislative act violates art. III, § 18 if the act (1) creates a totally arbitrary and unreasonable method of classification, or (2) creates a permanently closed class. Bergan Mercy Health System v. Haven,260 Neb. 846, 620 N.W.2d 339 (2000); Mapco v. State Board of Equalization, 238 Neb. 565, 471 N.W.2d 734 (1991); Haman v. Marsh,237 Neb. 699, 467 N.W.2d 836 (1991). The classification created by LB 1246 must be tested under that standard.
The first part of the special legislation test involves a determination as to whether a statutory classification is totally arbitrary and unreasonable. In that context, the classification must bear a reasonable and substantial relation to the legitimate objects and purposes of the legislation. Pick v. Nelson, 247 Neb. 487, 528 N.W.2d 309
(1995). As stated in the Haman case:
 A legislative classification, in order to be valid, must be based upon some reason of public policy, some substantial difference of situation or circumstances, that would naturally suggest the justice or expediency of diverse legislation with respect to the objects to be classified. Classifications for the purpose of legislation must be real and not illusive; they cannot be based on distinctions without a substantial difference . . . Classification is proper if the special class has some reasonable distinction from other subjects of like general character, which distinction bears some reasonable relation to the legitimate objectives and purposes of the legislation. The question is always whether the things or persons classified by the act form by themselves a proper and legitimate class with reference to the purpose of the act.
Haman v. Marsh, 237 Neb. 699, 711, 467 N.W.2d 836, 846 (1991) (quoting State ex rel. Douglas v. Marsh, 207 Neb. 598, 300 N.W.2d 181
(1980)) (emphasis in original).
By singling out nonprofit corporations organized to own or furnish convention or civic centers or facilities on behalf of governmental bodies for tax exemption, LB 1246 draws a distinction between nonprofit corporations organized for these specific purposes, and other nonprofit corporations. A question may exist as to whether a "substantial difference of situation or circumstances" exists to distinguish between nonprofit corporations organized for the purpose of providing convention or civic centers or facilities for governmental bodies, and nonprofit corporations which are formed to provide other public buildings for governmental bodies. Limiting the exemption to nonprofit corporations engaged in providing civic or convention centers or facilities could be construed as an unreasonable and unduly narrow classification, in that other worthy public works could also be provided to government bodies by providing such an exemption, which are not accorded similar treatment under LB 1246.
B. Sales Tax Exemption
LB 1246 also would grant to qualifying nonprofit corporations incorporated to erect, own or furnish civic, cultural, or convention area or facilities for a governmental body the "exemptions relating to . . . sales and use taxes . . . of the body . . . for whose use or benefit or for whom in trust such property is held." Sales and use taxes are "excise taxes," not property taxes. See State v. Galyen, 221 Neb. 497, 500,378 N.W.2d 182, 185 (1985) ("Excise tax" is "'[a] tax imposed on the performance of an act. . . . Tax laid on manufacture, sale, or consumption of commodities. . . .'" (quoting Black's Law Dictionary (5th ed. 1979) at 506)). Thus, the Constitutional provisions and restrictions pertaining to property taxes and exemptions from property taxes in Neb. Const. art. VIII, §§ 1 and 2, are not applicable to sales and use taxes. See State v. Galyen, 221 Neb. at 502-03, 378 N.W.2d at 186-87 (Excise tax not subject to requirement of uniformity and proportionality in art. VIII, § 1).
Nebraska's current sales and use tax statutes provide an exemption for purchases by specified governmental units, including "the state, . . . public educational institutions recognized or established under the provisions of Chapter 85 . . .," and "any county, township, city, village, rural or suburban fire protection district, city airport authority, county airport authority, joint airport authority, natural resources district, or joint entity or agency formed to fulfill the purposes described in the Integrated Solid Waste Management Act . . ., or public schools established under Chapter 79." Neb. Rev. Stat. §77-2704.15(1) (Cum. Supp. 2000). Pursuant to Nebraska Department of Revenue ["NDOR"] regulations, purchases by nonprofit corporations created for purposes identified in § 21-1927 are not exempt from sales and use tax. NDOR Reg-1-093.06M.[3]
The issue raised by the proposal under LB 1246 to grant nonprofit corporations engaged in owning or holding civic, cultural, or convention center facilities for a governmental body the same sales and use tax exemption the government body would enjoy if purchasing property directly is again one of reasonableness of the classification. While the Legislature has the power to classify, it cannot do so in an arbitrary or unreasonable manner. "Classifications for the purpose of legislation must be real and not illusive; they cannot be based on distinctions without a substantial difference." City of Scottsbluff v. Tiemann, 185 Neb. 256,266, 175 N.W.2d 74, 81 (1970).
As we noted in analyzing whether the property tax exemption in LB 1246 establishes a reasonable classification, a question may exist as to whether a "substantial difference of situation or circumstances" exists to distinguish between nonprofit corporations organized for the purpose of providing convention or civic centers or facilities for governmental bodies, and nonprofit corporations which could be formed to provide other public buildings for governmental bodies. Limiting the sales and use tax exemption, as well as the property tax exemption, to nonprofit corporations engaged in providing civic or convention centers or facilities could be construed as an unreasonable and unduly narrow classification, in that other public buildings could also be provided to government bodies by providing such an exemption, which are not accorded similar treatment under LB 1246.
C. Conclusion
In conclusion, we believe that the ownership or furnishing of a civic, cultural, or convention center or facility by a nonprofit corporation for the use or benefit of a governmental body constitutes a "public purpose" within the meaning of Neb. Const. art. VIII, § 2, and Neb. Rev. Stat. § 77-202(1)(a). Thus, to the extent LB 1246 seeks to provide a property tax exemption for a facility of this nature if held for such purpose by a nonprofit corporation for a governmental body, it is consistent with the "public purpose" requirement imposed by the Constitution, and the statutory definition of "public purpose" in §77-202(1)(a). There is some question, however, as to whether limiting the property tax exemption (as well as the proposed sales and use tax exemption) to nonprofit corporations organized to provide only these limited types of civic, cultural, or convention center facilities creates an unreasonable classification prohibited by Neb. Const. art. III, §18.
Sincerely,
 DON STENBERG Attorney General
 L. Jay Bartel Assistant Attorney General
Approved by:
________________________ Attorney General
pc: Patrick O'Donnell Clerk of the Legislature
[2] It should be noted that the Florida Supreme Court, while recognizing that convention centers serve a "public purpose" for purposes of bond issuance, has not extended the "public purpose" analysis in bond validation cases to claims for property tax exemption by private parties leasing government owned property on the ground that the property is used for a "public purpose." Sebring Airport Authority v. McIntyre,783 So.2d 238 (Fla. 2001) (Holding statute creating property tax exemption for private, profit-making enterprises leasing government property unconstitutional and thus ineffective to grant exemption to private party leasing government property for raceway). In Sebring, the Florida Supreme Court interpreted the Florida Constitution to authorize property tax exemptions only for property used for "public purposes" which satisfy what it termed a "governmental-governmental" standard as opposed to a "governmental-proprietary" standard. Id. at 247-48. Under this analysis, the Court held unconstitutional the Florida Legislature's attempt to provide an exemption for government property leased to a private party to be used for propriety, for-profit activities. The amendment proposed by LB 1246, however, does not involve an attempt to extend an exemption to a for-profit entity seeking to use government property for a proprietary purpose; rather, it allows a nonprofit corporation to build or maintain a convention center for a government body, which we believe qualifies as a "public purpose."
[3] The regulation refers to § 21-1903, the predecessor to current § 21-1927. The regulations, last revised in 1994, have not been updated since former § 21-1903 was recodified in 1996 at § 21-1927. Also, § 21-1927 was amended in 1999 to eliminate the language providing nonprofit corporations the same "rights, privileges, and exemptions" of bodies for whose use or benefit or for whom in trust certain property was held. 1999 Neb. Laws, LB 271, § 1.