STATE, EX REL. TRENMOR CONE, APPELLANT, V. OTTO BAUMAN, COUNTY TREASURER, APPELLEE.

FILED JULY 3, 1930. No. 27222.

*Ziegler & Dunn,* for appellant.

*Henry J. Beal* and *W. W. Slabaugh, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ.

GOOD, J.

This is a mandamus proceeding in which relator sought to compel the county treasurer of Douglas county to turn over or transfer to the county road fund the money by him received from the state treasurer, and which represented Douglas county's proportion of the motor vehicle fuel tax fund. In the trial court the action was disposed of on a general demurrer to relator's petition; the writ was denied and the action dismissed. Relator appeals.

The appeal involves the constitutionality of the proviso contained in section 2, ch. 166, Laws 1929. It is conceded that if the proviso is constitutional the writ was properly denied, and that if it is unconstitutional the writ should have issued.

Chapter 172, Laws 1925, imposes a tax upon the sale and distribution of motor vehicle fuels and provides for the disposition of the revenue derived therefrom. This legislative act was amended in some respects by chapter 151, Laws 1927, and again amended by the enactment of chapter 166, Laws 1929. Section 1 of the latter act provides for the collection by the state treasurer of a tax of four cents a gallon on motor vehicle fuels; and section 2 provides for the distribution of the fund so collected; one-fourth of the net proceeds of the tax collection is required to be

transferred to the several county treasurers in certain proportions, and the amount thus transferred shall be credited to the county road fund. Then follows this proviso: "Provided, the money so transferred to the county treasurers in counties having a population of one hundred and fifty thousand or more shall be used by the county treasurer to pay the interest on and retire any present existing county highway construction bonds, and the balance, if any, shall be credited to the county road fund."

From the record it appears that Douglas county has issued $3,000,000 of highway construction bonds and that it is the only county in which such bonds have been issued. Demand was made upon the county treasurer to transfer to the county road fund of Douglas county the fund so received from the state treasurer. The demand was refused on the ground that, said county having a population of more than 150,000, the disposition of the fund is controlled by the proviso in section 2, ch. 166, Laws 1929. Relator contends that the proviso is invalid because it conflicts with several provisions of the state Constitution, but particularly in that it violates section 18, art. III, which inhibits the legislature from passing a special law where a general law can be made applicable. On the other hand, respondent urges that the proviso is susceptible of two constructions. By the one it might be construed to refer only to bonds existing at the time of the adoption of the legislative act; by the other, that it would apply to bonds existing at the time any of the tax collections were turned over to the county treasurer. Respondent advances the proposition that, where a legislative act is susceptible of two constructions, one of which would render it constitutional and the other unconstitutional, the former is to be preferred.

The legal proposition may be conceded to be sound, and, for argument's sake, it may be conceded that the proviso might be construed to relate to any bonds that might be in existence when the fund arising from the tax is paid over to the treasurer of Douglas county. We are still con-

fronted, however, with the question as to whether the classification is arbitrary and unreasonable.

In *Galloway v. Wolfe,* 117 Neb. 824, this court had under consideration the validity of a statute making it unlawful for any person, of the age of 14 years and upward, to engage in public dancing on Sunday, except in cities of the metropolitan class having a public welfare board, with authority to regulate public dancing, and the court held the act to be in violation of section 18, art. III of the Constitution. Many of the decisions of this court, as well as those from other jurisdictions, were cited and quoted from in the opinion in that case.

We recognize that many statutes, dealing with governmental questions, have classified counties and cities according to their population, and that such classifications have been upheld, but in all of those cases some reason for the classification has been disclosed. We think the rule that should be applied is well stated in *Connolly v. Union Sewer Pipe Co.,* 184 U. S. 540, 560, wherein it is said: "The difficulty is not met by saying that, generally speaking, the state when enacting laws may, in its discretion, make a classification of persons, firms, corporations and associations, in order to subserve public objects. For this court has held that classification 'must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. * * * But arbitrary selection can never be justified by calling it classification.'"

The rule is also set forth in 26 R. C. L. 243, sec. 216, in the following language: "It must appear not only that a classification has been made, but also that it is one based upon some reasonable grounds—some difference which bears a just and proper relation to the attempted classification—and is not a mere arbitrary selection, and there can be no discrimination between subjects which properly belong to the same class."

In 1 Lewis' Sutherland Statutory Construction (2d ed.) 401, sec. 216, it is said: "In respect to the enumerated

subjects as to which legislation is required to be general, and special acts prohibited, though such subjects may be divided into classes distinguished by substantial differences for the purpose of legislation appropriate to such conditions as spring from these differences, there must nevertheless be a limit to such division, even founded on substantial differences. Within certain limits subjects may be grouped on the basis of such differences for general legislation; beyond those limits such differences would not be the basis of classification, but the ground of segregation by which each individual would be distinguished for special enactments. The prohibition is in the way of legislation for individual cases. It is equally fatal to such legislation though it be general in form. If a statute is plainly intended for a particular case, and looks to no broader application in the future, it is special or local, and, if such laws are prohibited on the subject to which it relates, it is unconstitutional."

In *Allan v. Kennard*, 81 Neb. 289, 293, it is said: "It is also true that the legislature may classify the subjects, persons or objects as to which it legislates. But such classification should rest upon some difference in situation or circumstances between the thing or person placed in one class and that placed in another. The power of classification rests with the legislature, and this power cannot be interfered with by the courts, unless it is clearly apparent that the legislature has by an artificial and baseless classification attempted to evade and violate the provisions of the Constitution prohibiting special and local legislation."

In *Edmonds v. Herbrandson*, 2 N. Dak. 270, 274, it is said: "The classification must be natural, not artificial. It must stand upon some reason, having regard to the character of the legislation."

In *Vermont Loan & Trust Co. v. Whithed*, 2 N. Dak. 82, 94, it is said: "But this power of the legislature is circumscribed. It is not an arbitrary power waiting the whim of the legislature. Its exercise must always be within the limits of reason, and of a necessity more or less pronounced. Classification must be based upon such differences in situ-

ation, constitution or purposes, between the persons or things included in the class and those excluded therefrom, as fairly and naturally suggest the propriety of and necessity for different or exclusive legislation in the line of the statute in which the classification appears."

In *State v. Hammer*, 42 N. J. Law, 435, 440, it is said: "But the true principle requires something more than a mere designation by such characteristics as will serve to classify, for the characteristics which thus serve as the basis of classification must be of such a nature as to mark the objects so designated as peculiarly requiring exclusive legislation. There must be substantial distinction, having a reference to the subject-matter of the proposed legislation, between the objects or places embraced in such legislation and the objects or places excluded. The marks of distinction on which the classification is founded must be such, in the nature of things, as will, in some reasonable degree, at least, account for or justify the restriction of the legislation."

In *Krause v. Durbrow*, 127 Cal. 681, 685, quoting from *Darcy v. Mayor*, 104 Cal. 642, it is said: "This classification, however, must be founded upon differences which are either defined by the Constitution or natural, and which will suggest a reason which might rationally be held to justify the diversity in the legislation. It must not be arbitrary, for the mere purpose of classification, that legislation really local or special may seem to be general, but for the purpose of meeting different conditions naturally requiring different legislation." Further quoting from the case of *People v. Central P. R. Co.*, 105 Cal. 584, it is said: "The class, however, must not only be germane to the purpose of the law, but must also be characterized by some substantial qualities or attributes which render such legislation necessary or appropriate for the individual members of the class. It may be 'founded upon some natural or intrinsic or constitutional distinction,' but the distinction must be of such a nature as to reasonably indicate the necessity or propriety of legislation restricted to that class."

The rule is well established that the legislature may, for the purpose of legislating, classify persons, places, objects

or subjects, but such classification must rest upon some difference in situation or circumstance which, in reason, calls for distinctive legislation for the class. The class must have a substantial quality or attribute which requires legislation appropriate or necessary for those in the class which would be inappropriate or unnecessary for those without the class.

The outstanding highway construction bonds in Douglas county were issued pursuant to a statute applicable to all counties. The same statute still exists. Each and every county in the state is, by this law, empowered to issue like bonds to aid in the construction of highways. The proviso in section 2, ch. 166, Laws 1929, authorizes Douglas county alone to use its proportion of such tax fund to pay the interest on and retire its highway construction bonds. Every other county in the state that may have heretofore issued, or may hereafter issue, such bonds is denied the privilege of so using its proportion of the tax fund in a like manner. No substantial difference in condition or circumstance is apparent that would apply to counties having a population of more than 150,000 that would not apply to those having a less population. No valid reason has been pointed out, nor can we conceive of any that could exist, which would accord to one county this privilege, while denying it to all others.

It is apparent that the proviso in section 2, above quoted, is special and class legislation and violates section 18, art. III of the Constitution. It is with regret that we are forced to this conclusion, for the reason that it may properly be desirable for any county that has issued bonds to aid in the construction of its highways to use a part or all of the particular tax fund to discharge such bonded indebtedness. However, another legislature can easily remedy the defect by according the same privilege to all counties. Since the provision is invalid, it affords no justification to the respondent in refusing to transfer the tax fund in question to the county road fund.

The judgment of the district court is reversed and the cause remanded, with directions to issue writ of mandamus as prayed by relator.

REVERSED.