LAWRENCE C. SANDBERG, JR., APPELLANT, V. STATE OF NEBRASKA ET AL., APPELLEES.

196 N. W. 2d 501

Filed April 18, 1972. No. 38243.

Lawrence C. Sandberg, Jr., for appellant.

Clarence A. H. Meyer, Attorney General, and Ralph H. Gillan, for appellees.

Heard before SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ., and COLWELL, District Judge.

SPENCER, J.

This is an appeal from the sustaining of appellees' general demurrer to appellant's petition. The action, brought on behalf of appellant and all others similarly situated, seeks to declare Laws 1971, LB 87, now sections 77-2602, 77-2608, 77-2610, 77-2616, 85-1,100, 85-1,101, and 85-1,102, R. S. Supp., 1971, unconstitutional, and to enjoin its enforcement. The questions presented are solely ones of law and not of fact. We affirm the sustaining of the demurrer.

LB 87 increases the tax on cigarettes from 8 to 13 cents per package, and appropriates the 5 cent increase as follows: To the Department of Public Institutions for the construction of an activities building at the Beatrice State Home, until the sum of $695,000 is accumulated. Thereafter, said tax is appropriated equally to the State Office Building Fund, and the University of Nebraska at Lincoln Field House Fund. The bill was enacted with the emergency clause, on a vote of 34 Ayes, 11 Nays, and 4 Not Voting. It was sent to the Governor and returned by him without his signature, which constituted a veto. The Legislature then voted

to override the veto, as follows: 31 Ayes, 14 Nays, and 4 Not Voting.

Appellant contends that LB 87 is unconstitutional for the following reasons: (1) It constitutes a special law in favor of the State, in violation of Article III, section 18, Constitution of Nebraska; (2) it deprives appellant of his property without due process of law, and violates his equal rights in violation of the provisions of both the Nebraska and the United States Constitutions; and (3) it was not enacted by a sufficient vote to override the veto of the Governor.

Article III, section 18, Constitution of Nebraska, specifically provides that the Legislature shall not pass local or special laws in certain specified areas, and then provides: "In all other cases where a general law can be made applicable, no special law shall be enacted."

Appellant contends that when the Legislature enacted a law providing a tax increase upon a given and limited segment of the population of the State, and provided within the law that the proceeds thereby raised be used for specified and limited public facilities bearing no relation to the tax or to the taxpayers, such law must be determined to have been enacted solely for the purpose of accomplishing the construction of the public facilities enumerated, and accordingly the same constituted a special law in favor of the State. Appellant argues that such action by the Legislature "violates the letter, if not the intent, of Article III, Section 18, of the Nebraska Constitution."

If we understand the thrust of appellant's argument, it is that any construction of the nature involved constitutes a special law in favor of the State. Appellant misinterprets the intent of Article III, section 18, Constitution of Nebraska. The same point was raised in Stewart v. Barton (1912), 91 Neb. 96, 135 N. W. 381, involving an act to appropriate $100,000 for the construction and equipment of a laboratory building on the campus of the Medical College of the University of

Nebraska at Omaha. The following language from that case is particularly pertinent: "While it is alleged that this is the purpose of the act, the allegation is mere surplusage, since it is clearly beyond the power of the court to inquire into the springs of legislative action. With inquiries as to the hidden motives prompting the enactment of laws or the wisdom of legislative measures, the courts can have nothing to do. Moreover, the prohibition against the legislature enacting local or speical laws is not general, but is confined to the specific cases mentioned in section 15, art. III of the constitution. It is within its power to legislate upon any subject not therein prohibited (State v. Moores, 55 Neb. 480, 489), and we find no prohibition in the clause mentioned against such an act as this."

If appellant is inferentially arguing that the tax in and of itself is a special law, the question is entirely one of classification. In Gossman v. State Employees Retirement System (1964), 177 Neb. 326, 129 N. W. 2d 97, we said: "The principles to be applied to testing legislative classification have been well established. The difficulty arises in their application to a particular set of facts or a particular legislative act. Classification is proper if the special class has some reasonable distinction from other subjects of a like general character, which distinction bears some reasonable relation to the legitimate objectives and purposes of the legislation. The Legislature may, and many times must, carve out classes or distinctions that would appear arbitrary or unreasonable. But, on closer examination, it is found that the classifications are related to and are necessary for the accomplishment of the legitimate purposes of the legislation. The question is always whether the things or persons classified by the Act form by themselves a proper and legitimate class with reference to the purposes of the Act. See 2 Sutherland, Statutory Construction (3d Ed.), § 2104, p. 14. See, also, Wilson v. Marsh, supra; Hessian v. Ervin, 204 Minn. 287, 283

N. W. 404; Lickert v. City of Omaha, supra; Sullivan v. City of Omaha, supra."

Appellant in argument conceded that the class of cigarette purchasers forms a legitimate class for the purpose of imposition of a tax, and that the three proposed building funds are proper purposes for the benefit of the general public. He admits that if two bills had been introduced, one to increase the cigarette tax and one to fund the constructions provided for in LB 87, there would be no constitutional question. He argues in that situation two final votes would have been required, and either might have failed. This has nothing to do with the special law argument.

There have been many other instances where the Legislature has made specific disposition of tax proceeds directly into special funds without first putting them into the General Fund and without any particular connection or relationship to the taxpayer. We believe, however, that this is the first time this practice has been challenged before this court.

In Cincinnati Soap Co. v. United States (1937), 301 U. S. 308, 57 S. Ct. 764, 81 L. Ed. 1122, which involved an excise tax on coconut oil, the Supreme Court said, referring to the attack on the tax: "It is said to be bad because it is earmarked and devoted from its inception to a specific purpose. But if the tax, *qua* tax, be good, as we hold it is, and the purpose specified be one which would sustain a subsequent and separate appropriation made out of the general funds of the Treasury, neither is made invalid by being bound to the other in the same act of legislation. The only concern which we have in that aspect of the matter is to determine whether the purpose specified is one for which Congress can make an appropriation without violating the fundamental law. If Congress, for reasons deemed by it to be satisfactory, chose to adopt the quantum of receipts from this particular tax as the measure of

the appropriation, we perceive no valid basis for challenging its power to do so."

In State ex rel. School Dist. of Scottsbluff v. Ellis (1959), 168 Neb. 166, 95 N. W. 2d 538, we said: "It is the fundamental law of this state that the Legislature is vested with the taxing power without limit, subject only to restrictions contained in the Constitution. It is axiomatic therefore that the provisions of the Constitution in relation to taxation are not grants of power but are limitations on the taxing power of the state lodged in the Legislature. State ex rel. Atchison & N. R. R. v. Lancaster County, 4 Neb. 537, 19 Am. R. 641; State v. Cheyenne County, 127 Neb. 619, 256 N. W. 67. It is just as fundamental that the power to tax and the power to provide for the disposition of taxes raised are identical and inseparable, and the Legislature is clothed with full power and control over the disposition of revenues derived from taxation, including those raised by political subdivisions of the state under authority of the state, subject only to constitutional restrictions. 85 C. J. S., Taxation, § 1057, p. 644."

Appellant admits that the facilities funded by LB 87 are for proper public purposes and every citizen in the State has an interest in them. His principal contention, however, is that cigarette purchasers have no more interest or stake in the facilities funded by the proceeds of the increase in the cigarette tax than nonsmokers. He questions the power of the Legislature to tax that one segment of the population for projects which benefit the entire population. Actually, many tax exactions do exactly this. There is a general discussion on the subject in 51 Am. Jur., Taxation, § 332, p. 382, where this language is found: "Property may not be taxed for a purpose in which the owners or occupants have no interest, from which they can derive no benefit, and which is solely for the benefit of others. If a tax levy, however, is for a public purpose, it is no objection to its validity that the benefits paid and

the persons to whom they are paid are unrelated to the persons taxed. Nothing is more familiar in taxation than the imposition of tax upon a class or upon individuals who enjoy no direct benefit from its expenditure, and who are not responsible for the condition to be remedied by the tax. A tax designed to be expended for a public purpose does not cease to be one levied for that purpose because it has the effect of imposing a burden upon one class of business enterprises in such a way as to benefit another class."

In Carmichael v. Southern Coal & Coke Co. (1937), 301 U. S. 495, 57 S. Ct. 868, 81 L. Ed. 1245, 109 A. L. R. 1327, the Supreme Court discussed this problem, saying: "It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation. * * * This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation. * * *

"A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function. * * *

"It is not denied that since the adoption of the Fourteenth Amendment state taxing power can be exerted only to effect a public purpose and does not embrace the raising of revenue for private purposes. * * * but

the requirements of due process leave free scope for the exercise of a wide legislative discretion in determining what expenditures will serve the public interest. * * *

"Nothing is more familiar in taxation than the imposition of a tax upon a class or upon individuals who enjoy no direct benefit from its expenditure, and who are not responsible for the condition to be remedied.

"A tax is not an assessment of benefits. It is, as we have said, a means of distributing the burden of the cost of government. The only benefit to which the taxpayer is constitutionally entitled is that derived from his enjoyment of the privileges of living in an organized society, established and safeguarded by the devotion of taxes to public purposes. See Cincinnati Soap Co. v. United States, supra. Any other view would preclude the levying of taxes except as they are used to compensate for the burden on those who pay them, and would involve the abandonment of the most fundamental principle of government—that it exists primarily to provide for the common good. A corporation cannot object to the use of the taxes which it pays for the maintenance of schools because it has no children. Thomas v. Gay, 169 U. S. 264, 280. This Court has repudiated the suggestion, whenever made, that the Constitution requires the benefits derived from the expenditure of public moneys to be apportioned to the burdens of the taxpayer, or that he can resist the payment of the tax because it is not expended for purposes which are peculiarly beneficial to him."

Appellant's third assignment, that LB 87 was not enacted by a sufficient vote to override the veto of the Governor, presents a more serious question.

Under the agreed facts, this bill was enacted by the Legislature on April 20, 1971, by a vote of 34 Ayes, 11 Nays, and 4 Not Voting. On April 26, 1971, the Governor returned the bill to the Legislature without his signature. The Legislature then, on a vote to over-

ride the veto, voted 31 Ayes, 14 Nays, and 4 Not Voting.

Article III, section 27, Constitution of Nebraska, provides in part: "No act shall take effect until three calendar months after the adjournment of the session at which it passed, unless in case of emergency, to be expressed in the preamble or body of the act, the Legislature shall, by a vote of two-thirds of all the members elected to each House otherwise direct." Two-thirds of the 49 members of the Legislature is 33. Thirty-four votes, therefore, were more than adequate to pass the bill with the emergency clause. When the Governor vetoed the bill, this brought into play Article IV, section 15, Constitution of Nebraska, which provides in part: "Every bill passed by the Legislature, before it becomes a law, * * * shall be presented to the Governor. If he approves he shall sign it, and thereupon it shall become a law, but if he do not approve, he shall return it with his objections to the House in which it shall have originated, which House shall enter the objections at large upon its journal, and proceed to reconsider the bill. * * * and if approved by three-fifths of the members elected * * * it shall become a law, notwithstanding the objections of the governor."

Appellant's point is that although the bill originally passed with sufficient votes to justify the emergency clause, that notwithstanding the provisions of Article IV, section 15, it required 33 votes to override the Governor's veto when the bill contained the emergency clause. It is the State's contention that this situation is controlled by Article IV, section 15, regardless of the vote required to pass the bill in the first instance.

The history of Article IV, section 15, would refute appellant's contention. This language came into the Constitution in 1875. Volume III, Nebraska Constitutional Convention (1913), is an official report of the Journals of the Convention of 1875. On pages 565 and 566 is found the proposed draft of section 15. It reads,

so far as material herein, as follows: "Every bill pas-sed by the legislature, before it becomes a law, * * * shall be presented to the governor. If he approve, he shall sign it and thereupon it shall become a law; but if he do not approve he shall return it with his objections to the house in which it shall have originated, which house shall enter the objection at large upon its journals and proceed to reconsider the bill. If, then, three-fifths of the members elected agree to pass the same, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered, and if approved by three-fifths of the members elected to that house, it shall become a law, notwithstanding the objections of the governor; *but the vote necessary to repass such bill shall not be less than that required on the original passage in each house.*" (Emphasis supplied.)

At page 597, we find the following: "Mr. President, the convention, in committee of the whole, have had under consideration the article on Executive and made the following amendments thereto: * * *

"4th. Strike out the words 'but the vote necessary to repass such bill shall not be less than that required on the original passage in each house,' in lines 10, 11 and 12, in section 15."

On page 599 we find: "The question being upon the adoption of the executive article as amended and reported back by the committee of the whole house, the first, second, third, fourth, and fifth amendments were concurred in."

It would, therefore, seem patent that the Constitutional Convention considered the possibility of the exact proposition contended for by appellant, and rejected it in the adoption of Article IV, section 15. The wording of section 15 is clear and unambiguous. To read into it the interpretation contended for by the appellant would require us to amend the Constitution. This we refuse to do. We, therefore, hold that a legislative bill passed

with an emergency clause, vetoed by the Governor, is within the ambit of Article IV, section 15, Constitution of Nebraska, and requires only a three-fifths vote to override the veto.

While the case is not mentioned by the parties, we are not unmindful of State ex rel. Main v. Crounse (1893), 36 Neb. 835, 55 N. W. 246, 20 L. R. A. 265, which would seem to sustain appellant's position. That case, however, is distinguishable on its facts in that the original bill even without an emergency clause required a two-thirds vote. Insofar as some language in that opinion may be construed to hold otherwise, State ex rel. Main v. Crounse, *supra*, is overruled.

Appellant's assignments of error are without merit. The demurrer was properly sustained, and the judgment is affirmed.

AFFIRMED.