NEBRASKA PUBLIC POWER DISTRICT,
A PUBLIC CORPORATION, APPELLEE, V.
HERSHEY SCHOOL DISTRICT ET AL., APPELLANTS.

299 N.W.2d 514

Filed December 5, 1980. No. 42965.

John P. Murphy of Ruff & Murphy for appellants Hershey School Dist. et al.

Thomas M. Shanahan of McGinley, Lane, Mueller, Shanahan & McQuillan for appellant Ogallala School Dist.

John R. McPhail and Barlow, Johnson, DeMars & Flodman for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

McCOWN, J.

The plaintiff, Nebraska Public Power District, a public corporation, brought this action against the defendant school districts seeking a declaratory judgment that Neb. Rev. Stat. § 79-1370 (Cum. Supp. 1980) is unconstitutional. The District Court for Lincoln County, Nebraska, found that § 79-1370 was unconstitutional and in violation of Neb. Const. art. VIII, § 11. The defendant school districts have appealed.

The plaintiff power district is a public corporation and a political subdivision of the State of Nebraska, and operates electrical generation and distribution systems within the State of Nebraska. Its property is exempt from taxation under Neb. Const. art. VIII, § 2.

In 1972, the plaintiff commenced construction of an electrical generation facility located near Sutherland, Nebraska. Construction of the facility continued over a period of years and involved some 1,500 construction workers. Many of their children were enrolled in various schools in the area. In 1978, the Legislature enacted § 79-1370 which became effective on March 16, 1978. That section provides: "In any year when the parents of at least ten per cent of the students or thirty-five students, whichever is less, attending public schools in any school district are employed in the construction of any electric generating facility, the public power district, municipality, electric cooperative, electric membership corporation,

or other entity constructing and owning such facility shall pay to such school district one half of the amount derived by taking the total operating expense of such school district for the preceding year less any federal funds received and any state funds received under Chapter 79, article 13, divided by the average daily attendance of resident and nonresident students in such school district for the preceding school year, multiplied by the number of children of such employees attending such school district."

During the summer and fall of 1978, the school boards of the defendant school districts submitted their claims under the statute to the plaintiff. In December 1978, the plaintiff filed its petition seeking a declaratory judgment as to the constitutionality of § 79-1370. The action was tried in the District Court for Lincoln County, Nebraska, on July 3, 1979, and on August 1, 1979, the District Court issued its memorandum opinion finding that § 79-1370 is in violation of Neb. Const. art. VIII, § 11, and is unconstitutional. The defendant school districts have appealed.

Some historical background is appropriate. The original enabling act providing for the creation and operation of public power districts in Nebraska was enacted in 1933. Thereafter, protests arose over the loss of tax revenue which would be sustained by the state and its various governmental subdivisions if tax exempt public power districts acquired the taxable properties of privately owned electrical facilities. The Legislature then enacted statutes which required any public power district which acquired property of an existing privately owned utility to make payments "in lieu of taxes" to the various taxing entities in amounts equal to those paid by the private utility in the year immediately preceding the purchase or acquisition. Payments in lieu of taxes on real property purchased from other than a private utility were required on the same basis for the year of acquisition, but for subsequent years the appropriate county

board of equalization was to determine the amount to be paid in lieu of taxes on such real estate "as equity and justice may require." See Neb. Rev. Stat. §§ 70-651 and 652 (Reissue 1958) (repealed 1959).

In the years that followed, case law in Nebraska and elsewhere raised substantial questions as to whether mandatory payments in lieu of taxes constituted an indirect attempt to tax public property which was otherwise exempt from taxation under the Constitution. In order to settle the issues, an amendment to the Constitution was proposed and adopted in 1958. That is the amendment involved here. Neb. Const. art. VIII, § 11, provides: "Every public corporation and political subdivision organized primarily to provide electricity or irrigation and electricity shall annually make the same payments in lieu of taxes as it made in 1957, which payments shall be allocated in the same proportion to the same public bodies or their successors as they were in 1957.

"The legislature may require each such public corporation to pay to the treasurer of any county in which may be located any incorporated city or village, within the limits of which such public corporation sells electricity at retail, a sum equivalent to five (5) per cent of the annual gross revenue of such public corporation derived from retail sales of electricity within such city or village, less an amount equivalent to the 1957 payments in lieu of taxes made by such public corporation with respect to property or operations in any such city or village. The payments in lieu of tax as made in 1957, together with any payments made as authorized in this section shall be in lieu of all other taxes, payments in lieu of taxes, franchise payments, occupation and excise taxes, but shall not be in lieu of motor vehicle licenses and wheel taxes, permit fees, gasoline tax and other such excise taxes or general sales taxes levied against the public generally.

"So much of such five (5) per cent as is in excess of an amount equivalent to the amount paid by such

public corporation in lieu of taxes in 1957 shall be distributed in each year to the city or village, the school districts located in such city or village, the county in which such city or village is located, and the State of Nebraska, in the proportion that their respective property tax mill levies in each such year bear to the total of such mill levies."

In 1959, the Legislature implemented the constitutional amendment and provided that every public power district owning property with respect to which it made payments in lieu of taxes in 1957 shall continue to pay annually the same amounts in the same manner so long as it continues to own such property. See Neb. Rev. Stat. § 70-651.01 (Reissue 1976). Former §§ 70-651 and 652 were repealed.

The appellant school districts contend that the Legislature has plenary power over a public corporation and that the provisions of § 79-1370 constitute only a statutory directive for the use of public funds held by a public power district and do not constitute a tax or a payment in lieu of taxes. The school districts argue that the obligation imposed upon a public power district by § 79-1370 should be called an impact charge for services rendered for the benefit of school children whose presence in the area was caused by and was for the benefit of the power districts.

The school districts contend that the provisions of the statute are comparable to the provisions of federal law which provide impact funds to local schools to offset the increased costs and burden caused by the attendance of children whose parents are involved in federal governmental activity. The obvious distinction between the federal law and § 79-1370 is that the federal legislation simply appropriates federal funds subject to the control of Congress.

In effect, the appellant school districts contend that because the state has plenary power over a public corporation, the state can require a public corporation to expend its funds for a public purpose, subject only

to the same constitutional limitations, as though it were directing the appropriation and disposition of general funds of the state. We disagree.

Neb. Const. art. VIII, § 11, provides that the in lieu of tax payments authorized by the section shall be in lieu of all other taxes and payments in lieu of taxes with specified exceptions. The amendment specifies not only which taxes and payments may not be assessed, but those which may be.

The critical issue here is whether the payments imposed on a public power district under the provisions of § 79-1370 are taxes or payments in lieu of taxes in violation of art. VIII, § 11.

Neb. Const. art. VIII, § 2, is also relevant here. It provides, in part: "The property of the state and its governmental subdivisions shall be exempt from taxation." In *Platte Valley Public Power & Irrigation District v. County of Lincoln*, 144 Neb. 584, 14 N.W.2d 202 (1944), this court held that a public power district is a governmental subdivision of the state within the meaning of that section and all of its property is exempt from taxation.

This court has consistently held that the Legislature is vested with the taxing power without limit, subject only to restrictions contained in the Constitution. It is, therefore, axiomatic that the provisions of the Constitution in relation to taxation are not grants of power but are limitations on the taxing power of the state. See, *State ex rel. School Dist. of Scottsbluff v. Ellis*, 168 Neb. 166, 95 N.W.2d 538 (1959); *Sandberg v. State*, 188 Neb. 335, 196 N.W.2d 501 (1972). The Legislature cannot circumvent an express provision of the Constitution by doing indirectly what it may not do directly. *United Community Services v. The Omaha Nat. Bank*, 162 Neb. 786, 77 N.W.2d 576 (1956); *State ex rel. Rogers v. Swanson*, 192 Neb. 125, 219 N.W.2d 726 (1974).

Constitutional provisions should receive a broader and more liberal construction than statutory provisions and constitutions are not subject to the rules of strict

construction. *University Police Officers Union v. University of Nebraska,* 203 Neb. 4, 277 N.W.2d 529 (1979).

Black's Law Dictionary 1307 (5th ed. 1979) defines a tax as "An enforced contribution of money or other property, assessed in accordance with some reasonable rule or apportionment by authority of a sovereign state on persons or property within its jurisdiction for the purpose of defraying the public expenses." The essential characteristics of a tax are that it is not a voluntary payment but an enforced contribution and, in its essential characteristics, is not a debt.

The school districts argue that the payments imposed upon a public power district under § 79-1370 do not constitute a tax or a payment in lieu of taxes but, instead, should be treated as an impact fee, or a direction to transfer funds, or by any title other than a tax or a payment in lieu of taxes. The argument rests upon the premise that the payments are imposed because of some sort of duty or obligation upon the public power district to pay for services rendered by the school districts to students who are children of construction workers employed by companies engaged in the construction of a power district facility. In essence, the school districts contend that the payments should be treated as payment for services rendered. The problem with that argument is that the students are residents of the school districts. Even if nonresidents were involved, the legal obligation for tuition would rest upon the parents. Even if it be assumed that an obligation somehow might be extended to employers of parents, the construction companies are the employers of the parents and the school districts are required by law to furnish school instruction to qualified resident students. As the trial court found, the services rendered by the school districts were not for the benefit of the power district, nor could they be, since instruction in the common schools of this state is required to be free. See Neb. Const. art. VII, § 1.

Under the specific language of art. VIII, § 11, unless

the payments involved here are something other than taxes, or payments in lieu of taxes, such payments are in violation of the constitutional provisions. Under the evidence, the payments required to be made by the plaintiff to the school districts here constituted taxes or payments in lieu of taxes in addition to those payments authorized by the Constitution. They were not in payment·of a debt or for services rendered by the school districts for the benefit of the power district.

Neb. Rev. Stat. § 79-1370 (Cum. Supp. 1980), by requiring public electric entities to make specific mandatory payments to school districts, violates the provisions of Neb. Const. art. VIII, § 11.

The judgment of the District Court was correct and is affirmed.

AFFIRMED.

KRIVOSHA, C.J., concurring

I concur in the result reached by the majority in this case. However, I would have decided this case on the basis that the statute in question, Neb. Rev. Stat. § 79-1370 (Cum. Supp. 1980), is invalid because it creates an unreasonable classification and is applied in an arbitrary manner and, therefore, violates Neb. Const. art. III, § 18. That provision of our state's Constitution prohibits legislative enactment of local or special laws with regard to the several subjects listed therein. The prohibitions of art. III, § 18, are to an extent limited to the subjects listed in the Constitution, see, e.g., *Stewart v. Barton*, 91 Neb. 96, 135 N.W. 381 (1912), but we must also be guided by the plain and clear language of the constitutional provision. The last sentence of art. III, § 18, states, "In all other cases where a general law can be made applicable, no special law shall be enacted." It is this constitutional directive which invalidates § 79-1370.

While it is true that the Legislature may classify the subjects, persons, or objects as to which it legislates, such classifications must rest upon differences in

situation or circumstances between the things dealt with in one class and those dealt with in another. As we have said in *State, ex rel. Cone, v. Bauman*, 120 Neb. 77, 82-83, 231 N.W. 693, 695 (1930): "The rule is well established that the legislature may, for the purpose of legislating, classify persons, places, objects or subjects, but such classification must rest upon some difference in situation or circumstance which, in reason, calls for distinctive legislation for the class. The class must have a substantial quality or attribute which requires legislation appropriate or necessary for those in the class which would be inappropriate or unnecessary for those without the class."

Legislative classification may not be done in an arbitrary or unreasonable manner. Arbitrary classification may result in special legislation. See *United Community Services v. The Omaha Nat. Bank*, 162 Neb. 786, 77 N.W.2d 576 (1956).

In this case, the Legislature has created a class consisting of electric utilities and made that class subject to assessments for the education of the children of persons engaged in constructing power plants. The basis for such charges appears to be the impact which a large influx of such students can have on a small school district's finances. The Legislature has simply ignored the similar impact which can result from other types of large construction projects. Thus, § 79-1370 discriminates against some entities with construction projects and in favor of others. The purpose of the statute — to alleviate financial stress on local school districts — does not account for such discrimination in the class created by the act. "Exceptions contained in a legislative classification cannot be justified if the discrimination thus made has no reasonable relation to the purposes of the act in which it is found." *United States Cold Storage Corp. v. Stolinski*, 168 Neb. 513, 526, 96 N.W.2d 408, 417 (1959). Thus, the statute at issue here creates a classification which includes electric utility companies constructing power

plants but excludes any other company or organization engaged in large construction projects. There is no rational distinction which explains why the construction of a power generating facility should cause the utility district to pay for the education of residents of the school district any more than construction of an interstate highway system through a school district, or the construction of an airfield, or any other large construction project should trigger such a result. Simply because it is suggested that the construction of a generating facility may have an impact upon a local school district is not to say that any other large project may not have such an impact. Because the exclusion from the act of all entities except power districts has no discernible relation to the purpose of the act, the classification is unreasonable and in violation of art. III, § 18.

Furthermore, § 79-1370 runs afoul of the Constitution on another ground. The statute provides no guidance for distinguishing between the children of construction workers who are residents of the local school district and those who are not. It would seem, if the purpose of the enactment was to diminish the financial impact on school districts which must educate the children of transient construction workers, that the statute should include some mechanism by which the assessment against the utility district would be based solely on the number of children who are members of these "transient families." However, no such device can be found within the statute. It simply does not address the situation in which workers employed in constructing a power plant are also residents and taxpayers of the local school district. In such a circumstance, under § 79-1370, the school district would, in effect, be the beneficiary of double taxation. This unreasonable result is produced directly by the arbitrary application of the law called for by the plain language of the statute itself. The statute requires utility districts to pay an assessment for the educa-

tion of the children of workers employed in the construction of a power plant. It makes no distinction for those families — workers and school children — who lived in the local school district before construction was proposed or begun. The utility district would be required to pay for all. This application of the statute has no relation to the purpose of the act which, once again, was to ease the budgetary burdens caused by a sharp *increase* in the size of the student body due to an influx of *new* students into the local district.

I write today because I do not wish for the holding in this case to suggest to the Legislature that it may not, under any circumstance, require a public utility to make payments simply because such payments may not be voluntary and, therefore, have some of the characteristics of a tax or a payment in lieu of tax. If required payments are otherwise appropriate, mere resemblance to a tax will not invalidate them. There may be a host of situations where such a payment is not in violation of either Neb. Const. art. VIII, § 2, or § 11, and also satisfies the prohibition of special legislation in Neb. Const. art. III, § 18.