**Raymond J. DONOVAN, Secretary of Labor, Plaintiff,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant.**

Civ. A. No. 84–2161.

United States District Court, District of Columbia.

July 19, 1985.

6. Thus, the court need not consider petitioner's motion to strike portions of various affidavits.

Francis X. Lilly, Donald S. Shire, Joseph M. Walsh, Joshua T. Gillelan, II, U.S. Dept. of Labor, Washington, D.C., for plaintiff.

Robert L. Polk, William B. Bircher, Carol A. Sigmond, Mark R. Pohl, Washington Metropolitan Area Transit Authority, Washington, D.C., for defendant.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

Before the Court are cross-motions for summary judgment filed by the parties in the above-captioned matter. The resolution of this case turns upon whether the Washington Metropolitan Area Transit Authority (WMATA), which is tax-exempt, is required to contribute to a special fund under section 44(c)(2) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 944(c)(2) (Supp. 1985). Because the Court is convinced that the required contribution does not constitute taxation and that, in any event, WMATA's exemption would not be applicable to workmen's compensation contributions, the Court grants summary judgment for plaintiff.

## I.

## BACKGROUND

WMATA operates public transit facilities and services in the metropolitan Washington, D.C. area. It is a creature of an interstate compact ratified by the Congress. *See* D.C.Code 1–2431 (Supp.1984). In addition to declaring the purposes, functions, organization and operation of WMATA, the Compact also provides that WMATA "shall not be required to pay taxes or assessments upon any of the property acquired by it or under its jurisdiction, control, possession or supervision or upon its activities in the operation and maintenance of any transit facilities or upon any revenues therefrom and the property and income derived therefrom shall be exempt from all federal, State, District of Columbia, municipal and local taxation...."

■ WMATA, as an employer in the District of Columbia, is subject to the LHWCA, as extended by the District of Columbia Workmen's Compensation Act, 45 Stat. 600, formerly codified at 36 D.C. Code §§ 501–502 (1973) ("DCWCA").[1] The LHWCA is designed to insure that eligible employees are compensated fairly for claims arising out of their employment and is to be liberally construed. *Director, Office of Workers' Compensation Programs, United States Department of Labor v. Perini North River Associates*, 459 U.S. 297, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983). As part of the scheme for funding of claims, section 44(c)(2) of the LHWCA requires that every insurer of an employer under the Act contribute to a "special fund," the purpose of which is to provide supplemental compensation to claimants in specific instances.[2]

From 1973 until the time this action was commenced, WMATA operated as a self-insurer under the LHWCA. *See* 33 U.S.C. § 932(a)(1) and (2). As required of all self-insurers, WMATA contributed to the special fund without protest from 1973 until the middle of 1983, when it refused to make any further payments.[3] WMATA as-

---

1. Liability for injuries arising out of employment after July 26, 1982 is determined by successor legislation to the DCWCA. *See* D.C.Code §§ 36–301 et seq. (Supp.1984).

2. A primary purpose of § 44(c)(2) is to discourage discrimination against the disabled. Section 8(f) of the LHWCA protects employers of a disabled employee who suffers a second injury in the course of his employment from paying more than such an employer would pay had he hired a non-disabled worker. The employer is directly responsible only for the harm caused by the second injury. Any additional compensation is covered by the special fund, to which all employers' insurers contribute. Thus, no employer is discouraged from hiring a disabled worker for fear of aggravated exposure in the event of a second injury.

3. Plaintiff notes that WMATA's refusal to contribute to the fund prior to 1982 would have been a basis upon which WMATA's status as a self-insurer could have been denied or revoked. Since 1982, no insurance requirement has been in effect with respect to employers. Therefore,

serted in the middle of 1983 that its tax exemption under § 78 of the Compact excused it from liability under § 44(c)(2) of the LHWCA. The Court is called upon to determine whether this assertion is accurate and tenable.

## II.

## ANALYSIS

### A. Contributions Under Section 44(c)(2) Do Not Constitute Taxation

■ WMATA argues in support of its contention that it has a tax-exempt status, that the contributions required by the LHWCA constitute a tax and not some other form of payment from which it would not be exempt. In support of this argument, it relies upon *Massachusetts v. United States*, 435 U.S. 444, 98 S.Ct. 1153, 55 L.Ed.2d 403 (1978).[4] However, the Court concludes that defendant's reliance on this case is misplaced. *Massachusetts v. United States* involved a determination whether a charge was a tax or a user fee under the Airport and Airway Revenue Act of 1970. The test enunciated[5] in that case was specifically tailored to address the question of whether a "registration tax" imposed by the federal government constituted an abuse of the federal taxing powers so as to interfere with a state's ability to perform essential services. The Court did not undertake to define a tax for general purposes and the specific factual and legal context in which that case arose makes it an undesirable precedent to govern the in-

stant litigation. By contrast, several other cases indicate that an involuntary payment is a tax when it is assessed upon persons or property in order to raise general revenue to defray the public expense. *Pace v. Hannibal*, 680 S.W.2d 944 (Mo.1984); *Nebraska Public Power District v. Hershey School District*, 207 Neb. 412, 299 N.W.2d 514 (1980); *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578 (Tenn.1975). This general rule suggests that contributions used to supply a specific fund with a specific purpose—in this case providing supplemental benefits in second injury cases—are not "taxes" within the meaning of the WMATA Compact.[6] The funds contributed under § 44(c)(2) of the LHWCA do not in a general sense finance the public expense. To the contrary, these funds are utilized only to provide supplemental benefits in second injury or upgraded compensation cases. As such, they hardly can be viewed as a tax, as generally defined.

### B. Even if Contributions Under Section 44(c)(2) Constitute Taxation, Tax Exemption Does Not Apply

■ If the contribution into the special fund is not a tax, then there is no statutory exemption shielding WMATA from liability. However, even if the contribution were to be viewed as a tax, the statutory exemption would not apply in this case, based on the controlling statutory construction, legisla-

---

WMATA's status as a self-insurer no longer was in jeopardy, even upon refusal to comply with § 44(c)(2). Although WMATA asserts that its refusal to pay the assessment is based upon reevaluation of the propriety of compliance, the Court finds striking the coincidence in time between WMATA's refusal to pay and the termination of its obligation to pay as a self-insurer.

**4.** Defendant also urges that *In re Pan American Paper Mills, Inc.*, 618 F.2d 159 (1st Cir.1980), illustrates that contributions into a workmen's compensation fund constitute taxation. The Court rejects this argument based on its view that the Pan American case is unpersuasive in a nonbankruptcy context. *See infra*, p. 1423, n. 8.

**5.** The Supreme Court held in *Massachusetts v. United States*, that a charge would be considered

a user fee and not a tax if the charge (1) was imposed in a nondiscriminatory manner; (2) was based on a fair approximation of each payor's share of the cost of the benefit received; and (3) was not excessive in relation to the cost to the government of the benefits received by the payor.

**6.** Defendant notes correctly that taxes ordinarily are exacted for a public purpose. While compensation of injured workers is without question within the public interest, the Court views such contributions as less a legislative exactment than a part of the statutory dynamic between tort immunity for employers' and workmen's compensation.

tive history, judicial interpretation and congressional policy.

### 1. Statutory Construction

By its very terms, the exemption does not shield WMATA from liability under LHWCA § 44(c)(2). It only protects WMATA from taxes and assessments[7] on its property, its activities or its revenues. Contrary to defendant's position, this is not an all-inclusive exemption, but rather one which is limited to specified areas. This is not to say that an exemption from taxes on property, activities and revenues is not a broad exemption. Such an exemption, however, is not so broad so as to preclude any taxation whatsoever. This statutory construction is consistent with the approach employed in this Circuit:

> An intention on the part of the legislature to grant an exemption from the taxing powers of the state will never be implied from language which will admit of any other reasonable construction.

*Washington Chapter of American Institute of Banking v. District of Columbia*, 203 F.2d 68, 70 (D.C.Cir.1953). Therefore, the payments to the special fund, even if considered a tax, are not included in the exemption because the payments are not taxation of property, activities or revenues.

### 2. Legislative History

The legislative history on the statutory sections under consideration underscores that the intention of Congress was *not* to exempt WMATA from making contributions into the fund. The House Judiciary Committee Report provides in part:

> *Section 78.  Tax Exemption.*—Declares that the creation of the Authority and its purposes are for the benefit of the people of the signatory States and is for a public purpose and that the Authority and the Board will be performing governmental functions.  Provides further that the property, activities, and revenues of the Authority and of the Board shall be ex-

empt from all Federal, State, District of Columbia, municipal, and local taxation.

H.R.Rep. 89–1914, 89th Cong., 2d Sess. (1966).

Although the legislative history reiterates that the purpose of the Compact is to benefit the public, it also emphasizes that the exemption is not absolute, but is limited to property, activities, and revenues of WMATA.  Congress easily could have provided a blanket exemption but it chose not to do so.  The section 44(c)(2) contributions are an example of payments that do not qualify for exemption under WMATA Compact § 78.

### 3. Judicial Interpretation

Cases construing tax exemptions in similar contexts have reasoned that workmen's compensation acts requiring contributions to finance the operation of the program do not permit exceptions to the contribution requirement, even where the exception is sought by a tax-exempt organization.  In *Port Authority of Allegheny County v. Smith*, 33 Pa.Commw. 410, 382 A.2d 153 (1978), a state workmen's compensation act required all insurers or self-insurers to contribute an annual assessment into a fund in order to finance the state workmen's compensation program.  The Port Authority, which was exempt by statute from paying "any taxes or assessments upon any property acquired or used by it," paid the assessment under protest.  After a Department of Labor Hearing Examiner determined that the legislature intended all insurers without exception to contribute into the fund, the Port Authority appealed to the Pennsylvania Commonwealth Court.  Based on its application of statutory construction, the state court affirmed the decision of the Hearing Examiner.  The statutory construction employed by the Pennsylvania court, 382 A.2d 155, is instructive for present purposes:

> [T]he legislature did not exempt an authority from paying *all* taxes or assess-

---

7.  The Court treats the statutory use of the word "assessments" as signifying only a localized liability, *Denver v. Tihen*, 77 Colo. 212, 235 P. 777

(1925), and thus focuses its attention solely on whether a tax exemption exists.

ments, but only those taxes or assessments upon *property acquired or used* by [it].... The assessment payable here is calculated upon the total amount of compensation paid by each insurer or self-insurer in a given calendar year.... [W]e fail to see how this assessment is an assessment upon port authority property acquired or used in connection with any of [its] authorized purposes.... (citations omitted).

In further response to the contention that immunity should attach based on the rule that public property devoted to public uses is immune from taxation absent a statute clearly expressing legislative intent that it shall not be immune, the court reasoned:

First, we are not construing a taxing statute in this case. In issue here is a provision ... designed to relieve the general funds of the Commonwealth from the burden of costs in administering a humanitarian measure. Second, even if [the assessment] were to be viewed as a taxing statute, [it] cannot be said to impose a tax upon public property devoted to the authorized public purposes of the Port Authority. The assessment assessed here is upon the total amount of compensation paid by an insurer or self-insurer, which amount does not constitute "public property" as that concept has been enunciated in the case law cited.

*Id.* The two quoted passages illustrate not only that the exemption enjoyed by WMATA is not all-inclusive, but also that it is insufficient in this case to insulate WMATA from contributing to the workmen's compensation fund.[8]

### 4. Congressional Policy

The Court also notes that permitting WMATA an exemption from contributing to the special fund is inconsistent with congressional policy. The purpose of paying benefits out of the fund is to spread the costs among all employer's insurers. Had WMATA not been self-insured, its insurer would have had to contribute to the fund. All the other participants' liabilities are increased due to WMATA's refusal to pay. The Court concludes that WMATA's refusal is in contravention of the statutory requirement that "[b]y insuring and keeping insured the payment of compensation under this chapter, *the employer shall secure the payment of compensation.*" 33 U.S.C. § 932(a)(1) (emphasis added).

Moreover, WMATA has abided by its other responsibilities under the LHWCA. It has not asserted that it is exempt from *direct* liabilities to workers in the case of injury, *see* 33 U.S.C. §§ 907–909 and 910(f), attorney's fees, *see* 33 U.S.C. § 928, or liability imposed by statute for mishandling claims, *see* 33 U.S.C. §§ 914(g) and 930(e). Liability under § 944(c)(2) is merely an extension of these direct liabilities under the statute for employment-related injuries and death. Therefore, section 44(c)(2) assessments are no more taxes or assessments than are those parts of employers' and carriers' workmen's compensation liabilities owed directly to injured workers, their survivors and their medical care providers.

### III.

### CONCLUSION

For the reasons articulated above, the Court concludes that the assessment against WMATA under the LHWCA is not

---

**8.** Defendant places reliance on *In re Pan American Paper Mills, Inc.,* 618 F.2d 159 (1st Cir.1980). The issue in Pan American was whether compulsory workmen's compensation of the type existing in this case constituted a tax under the Bankruptcy Act. The court held that such payments were a tax because they were a "pecuniary obligation to defray the expenses of government." Defendant urges that Pan American should govern the resolution of the present case. However, the Court notes, first, that Pan American is factually and legally distinguishable and, second, that Pan American and every case which has cited it involved the definition of "tax" in the specific context of the Bankruptcy Act. *See, e.g., In re Payne,* 27 B.R. 809, 815 (D.Kan.1983) (Pan American rejected a line of cases holding that workmen's compensation contributions were not for a public purpose so as to constitute a tax, but rejected such cases only in the context of the bankruptcy act).

a tax and that, even if it is viewed as a tax, it is not within the purview of the tax exemption provided by the WMATA Compact. The plaintiff's motion for summary judgment should be granted. As is obvious from the body of this opinion, WMATA is not entitled to reimbursement for any amounts it has contributed to the fund in the past.