REQUESTED BY: Senator Chris Beutler Nebraska Legislature
 INTRODUCTION
You have requested our opinion regarding the constitutionality of LB 657. The bill would establish a surcharge of 3.5 percent on the monthly electric bill of electricity subscribers. The surcharge would be collected by electricity suppliers and remitted to the State Treasurer for credit to the Low-Level Radioactive Waste Disposal Litigation Fund [the "Fund"]. The Fund is to be used for "settlement or judgment costs related to litigation over disposal of low-level radioactive waste to which the State of Nebraska is a party. . . ." LB 657, § 5. You intend to amend the bill to authorize use of monies in the Fund "to deal with any possible temporary cash flow problems or to make up general fund deficits." You state that, "[i]f not needed for the above two purposes, the revenue would be allocated to the low-level radioactive waste case judgment or settlement."
Your specific questions are: (1) Does the surcharge violate Neb. Const. art. VIII, § 2, which exempts property of the state or its governmental subdivisions from taxation when used for public purposes?; and (2) Does the surcharge violate Neb. Const. art. VIII, § 11, which provides that public corporations or political subdivisions providing electricity shall make payments in lieu of taxes, and that these payments shall be in lieu of all other taxes, with specified exceptions? For the reasons set forth below, we conclude that the surcharge does not contravene either constitutional provision.
 ANALYSIS A. Neb. Const., art. VIII, § 2.
Article VIII, § 2, of the Nebraska Constitution, provides, in pertinent part:
 (1) The property of the state and its governmental subdivisions shall constitute a separate class of property and shall be exempt from taxation to the extent such property is used by the state or governmental subdivision for public purposes authorized to the state or governmental subdivision by this Constitution or the Legislature.
In construing the requirement in Neb. Const. art. VIII, § 1, that taxes on property be levied "uniformly and proportionately," the Nebraska Supreme Court has held that this mandate applies only to "property" taxes, and does not apply to "excise taxes." State v. Garza,242 Neb. 573, 496 N.W.2d 448 (1993); State v Galyen, 221 Neb. 497,378 N.W.2d 182 (1985). Discussing the distinction between a property tax and an excise tax, the Court in Galyen noted the following definitions of these terms:
 Black's Law Dictionary (5th Ed. 1979) at 506 defines an excise tax as `A tax imposed on the performance of an act. . . .Tax laid on the manufacture, sale, or consumption of commodities. . . .' On the other hand, Black's Law Dictionary, supra, at 1097, defines a property tax as `A tax levied on both real and personal property; the amount of the tax being dependent on the value of the property, generally expressed as a uniform rate per thousand of valuation.'
221 Neb. at 500, 378 N.W.2d at 185.
The exemption in Neb. Const. art. VIII, § 2, for "property of the state and its governmental subdivisions," like the uniformity requirement in art. VIII, § 1, applies only to property taxes. Assuming, arguendo, that the electricity surcharge proposed in LB 657 constitutes a "tax," it is not a "property" tax imposed on governmental subdivisions engaged in supplying electricity. Rather, the surcharge would be in the nature of an "excise" tax imposed on electricity subscribers, based on the act of purchasing electricity service. The incidence of the surcharge falls on the electricity subscriber, not the provider. Accordingly, the exemption for property of the state and its governmental subdivisions in art. VIII, § 2, is not applicable to the surcharge proposed under LB 657, and the bill thus does not violate this constitutional provision.[1]
 B. Neb. Const. art. VIII, § 11.
Article VIII, § 11, provides:
 Every public corporation and political subdivision organized primarily to provide electricity or irrigation and electricity shall annually make the same payments in lieu of taxes as it made in 1957, which payments shall be allocated in the same proportion to the same public bodies or their successors as they were in 1957.
 The Legislature may require each such public corporation to pay to the treasurer of any county in which may be located any incorporated city or village, within the limits of which such public corporation sells electricity at retail, a sum equivalent to five (5) per cent of the annual gross revenue of such public corporation derived from retail sales of electricity within such city or village, less an amount equivalent to the 1957 payments in lieu of taxes made by such public corporation with respect to property or operations in any such city or village. The payments made in lieu of tax as made in 1957, together with any payments made as authorized in this section shall be in lieu of all other taxes, payments in lieu of taxes, franchise payments, occupation and excise taxes, but shall not be in lieu of motor vehicle licenses and wheel taxes, permit fees, gasoline tax and other such excise taxes or general sales taxes levied against the public generally.
 So much of such five (5) per cent as is in excess of an amount equivalent to the amount paid by such public corporation in lieu of taxes in 1957 shall be distributed in each year to the city or village, the school districts located in such city or village, the county in which such city or village is located, and the State of Nebraska, in the proportion that their respective property tax mill levies in each such year bear to the total of such mill levies.
Neb. Const. art. VIII, § 11 (emphasis added).
The effect of this constitutional provision was discussed by the Nebraska Supreme Court in Nebraska Public Power Dist. v. Hershey School Dist., 207 Neb. 412, 299 N.W.2d 514 (1980). In that case, the Court held that payments required by statute to be made by a public power district to offset the expense of educating the children of persons employed in the construction of electrical generating facilities constituted taxes or payments in lieu of taxes in addition to those payments authorized under the Constitution, and that the statute therefore violated art. VIII, § 11. In reaching this conclusion, the Court discussed the historical background behind the adoption in 1958 of the payments "in lieu of taxes" mandated by art. VIII, § 11:
 The original enabling act providing for the creation and operation of public power districts in Nebraska was enacted in 1933. Thereafter, protests arose over the loss of tax revenue which would be sustained by the state and its various governmental subdivisions if tax exempt public power districts acquired the taxable properties of privately owned electrical facilities. The Legislature then enacted statutes which required any public power district which acquired property of an existing privately owned utility to make payments `in lieu of taxes' to the various taxing entities in amounts equal to those paid by the private utility in the year immediately preceding the purchase or acquisition. Payments in lieu of taxes on real property purchased from other than a private utility were required on the same basis for the year of acquisition, but for subsequent years the appropriate county board of equalization was to determine the amount to be paid in lieu of taxes on such real estate `as equity and justice may require' . . . .
 In the years that followed, case law in Nebraska and elsewhere raised substantial questions as to whether mandatory payments in lieu of taxes constituted an indirect attempt to tax public property which was otherwise exempt from taxation under the Constitution. In order to settle the issues, an amendment to the Constitution was proposed and adopted in 1958.
207 Neb. at 414-15, 299 N.W.2d at 516 (citations omitted).
The electricity surcharge proposed under LB 657 would not violate art. VIII, § 11, as the surcharge is not imposed on a public corporation or political subdivision engaged in providing electricity; rather, the incidence of the surcharge is placed on the electrical subscriber. In this regard, the decision in Governors of the Knights of Ak-Sar-Ben v. Dep't of Revenue, 217 Neb. 518, 349 N.W.2d 385 (1984), is instructive. In that case, Ak-Sar-Ben contended it was not required to collect sales tax on admission charges to its racetrack because Neb. Rev. Stat. § 2-1208 imposed a tax of 30 cents per admission, and provided that "'[n]o other license tax, permit tax, occupation tax, or excise tax, . . . shall be levied, assessed, or collected from any 
licensee. . . .'" Id. at 519, 349 N.W.2d at 386. The Court noted that the 30 cent admissions tax was imposed on the licensee, while, "for purposes of the sales tax statutes the purchaser of the ticket is the taxpayer." Id. at 520, 349 N.W.2d at 387. Thus, the Court held that, as the sales tax was not levied or imposed on Ak-Sar-Ben, but on the purchasers of admissions, collection and remission of sales tax on ticket purchases by Ak-Sar-Ben was not prohibited by § 2-1208. Id. at 520-21,349 N.W.2d at 387-87. The electricity surcharge, like the sales tax, is a liability imposed on the electricity subscriber, not the electrical supplier.
Unlike the "mandatory payments" public electric utilities were required to make to school districts under the statute held unconstitutional in Nebraska Public Power Dist. v. Hershey School Dist., the electricity surcharge in LB 657 does not impose a liability or payment obligation on electricity suppliers. See also Op. Att'y Gen. No. 183 (Jan. 30, 1984) (Bill proposing to require public power districts providing electricity generated primarily from coal fuel sources to remit a portion of gross revenue for placement in a special fund to improve railroad grade crossings imposed "tax" or required "payments in lieu of taxes" in violation of art. VIII, § 11). As the surcharge is imposed on electricity subscribers, and not on public corporations or political subdivisions engaged in providing electricity, it does not violate art. VIII, § 11.
 CONCLUSION
Based on the foregoing, we conclude that the electricity surcharge proposed under LB 657 would not, if enacted, violate either Neb. Const., art. VIII, § 2, or Neb. Const., art. VIII, § 11.
Very truly yours,
 JON BRUNING Attorney General
 L. Jay Bartel Assistant Attorney General
APPROVED BY:
____________________________ Attorney General
pc: Patrick O'Donnell Clerk of the Legislature
[1] Also, as the surcharge is not a "property" tax, it does not contravene the constitutional prohibition against the levy of a property tax for state purposes in Neb. Const. art. VIII, § 1A.